THE STATE *ex rel.* VAN BROWN V. VAN EVERY *et al., Appellants.*

*(And Eight other Cases.)*

1. **Hannibal City Taxes**: LIEN FOR THEM: ENFORCEMENT THEREOF: GENERAL REVENUE LAW 1872. Since the passage of the general revenue law of 1872 the city of Hannibal has had no right of action in her own name to enforce the lien for delinquent city taxes. That lien, vested in the city by the charter of 1870, was taken from her by the above mentioned law and vested in the State and is to be enforced by suit in the name of the State.

2. ————. The charter of the city of Hannibal passed in 1873, as amended in 1874, conferred upon the city in addition to the power to levy taxes for general city purposes to the extent of one and a half per cent, a further power to levy taxes to pay the principal and interest of compromise bonds of the city to the extent of half of one per cent, and also a further power to levy a tax sufficient to pay any judgment that might be obtained against the city. Acts 1873, p. 241, §§ 1, 3; Acts 1874, p. 299.

3. **City Taxes**: SPECIAL LEVIES. When once a levy of taxes for general purposes has been made by a city, whether of less than the maximum rate allowed by law or not, no special levy even for an object that might properly be classed under the head of general purposes, can be made, in the absence of a provision of law authorizing it.

4. ————: CONSTITUTIONAL LAW. Section 11, article 10 of the constitution of 1875, operates a limitation upon the power of the general assembly to authorize cities and incorporated towns to levy taxes, but of its own force, confers no power to levy them.

5. **Taxes**: COLLECTOR'S CERTIFICATE AS EVIDENCE: CONSTITUTIONAL LAW. The provision of the present delinquent tax law which makes the collector's certificate *prima facie* evidence of the facts therein recited cannot be held unconstitutional as impairing the right of trial by jury. R. S. 1879, § 6837.

6. **Delinquent Taxes**: JURISDICTION OF JUSTICE OF THE PEACE: RECORDER OF CITY OF HANNIBAL. The present delinquent tax law confers upon justices of the peace jurisdiction of suits to collect delinquent taxes. R. S. 1879, § 6836. In the city of Hannibal their jurisdiction is concurrent with that of the city recorder.

*Appeal from Hannibal Court of Common Pleas.*—HON. THEODORE BRACE, Judge.

Some of the cases were reversed, some affirmed.

*Thos. H. Bacon* for appellants.

*T. S. Howell* for respondent.

HENRY, J.—These suits were instituted, a portion of them in the Hannibal court of common pleas, and the others before a justice of the peace of Marion county, to recover delinquent taxes, and enforce alleged city liens therefor against the real estate of the respective defendants, on which said taxes were assessed by the city. Plaintiff obtained judgment in all the cases, and they are here on appeal from the Hannibal court of common pleas, to which the cases originating in the justice's court were appealed, and the appellants contend that the city of Hannibal, and not the State of Missouri, was the proper party to sue.

In the case of the *State ex rel. Van Brown v. Sheperd,* 74 Mo. 310, the contrary was held, but, in a very able brief, we are urged by Mr. Bacon, for appellants, to reconsider the question, and a careful examination of all the points made in his brief has confirmed us in the opinion delivered in that case.

In the *City of Kansas v. Payne,* 71 Mo. 160, we held that the City of Kansas was the proper party to sue to enforce her lien for delinquent taxes: 1st, Because by the 24th section of the charter of that city, approved March 24th, 1875, the liens on real property theretofore declared in favor of the State for delinquent city taxes, were transferred to the city; and by section 76 of the same act, it was expressly provided that in all cases where taxes had become delinquent before the passage of the act, suit might be brought in the name of the City of Kansas to enforce collection of such taxes, etc., in any court of competent jurisdiction. It was contended that, by an act of the general assembly, approved April 24th, 1879, entitled "An act to amend sections 2, 3, 4, 5, 9, 11, 14, 17 and 18, of an act approved April 12th, 1877, entitled 'An act to provide for

the collection of delinquent State taxes due the State, and repealing section 184 of an act concerning the assessment and collection of the revenue, approved March 30th, 1872,'" the foregoing provisions of the charter of Kansas City were repealed, but it was held that if that act was intended to apply to Kansas City, it was to that extent unconstitutional, there being nothing in the title of the act to indicate such purpose; that the subject of the collection of taxes in a city which had a right and a remedy to collect them by suits in its own name, is not embraced in the phrase "State taxes."

By an act amendatory of the act incorporating the city of Hannibal, approved March 25th, 1870, it was provided that: "All taxes levied by the mayor and city council shall be a lien on the real estate on which the same may be imposed, and said lien shall continue until said taxes are paid." It was not expressly declared that the lien shall be held by the city, but the reasonable interpretation of the provision is, that the lien was given to the city, inasmuch as at that date no act of the general assembly had ever declared a lien in favor of the State for city or town taxes.

1. HANNIBAL CITY TAXES: lien for them: enforcement thereof: general revenue law 1872.

By an act approved March 30th, 1872, entitled "An act concerning the assessment and collection of the revenue," it was provided that: "Real property shall in all cases be liable for all taxes due any city or incorporated town or school district, and a lien is hereby created in favor of the State of Missouri for all such taxes, the same as for State and county taxes which lien shall be enforced as in this act provided." The term "revenue" is a general term, embracing as well city, town and county, as State revenue. The general assembly has absolute control of the revenues which counties, cities or towns are authorized by law to raise by taxation. Therefore, the title of the act of 1872 embraced the revenues of the towns and cities of the State unless some special provision of a city or town charter

withdrew its revenues from the provisions of the general statute.

It is insisted, however, that the effect of repealing the charter provision of the city of Hannibal is not to be given to the act of 1872, because at the same session of the legislature an act was passed amending the charter of the city of Hannibal, by which exclusive jurisdiction was given to the recorder of said city, in all cases arising in the collection of all the general and special city taxes, when the same are delinquent, in such proceedings as might be provided by ordinance. It does not necessarily follow because the act in question gave the recorder exclusive jurisdiction of suits for taxes due the city, that the city of Hannibal was the proper and only party to institute such suits. The authority given to the county collector to sue in the name of the State for city delinquent taxes, is not repugnant to the jurisdiction conferred upon the recorder by that act. Both provisions may stand together, and the result would be that in suing for delinquent taxes assessed by said city, the county collector would have to institute his suits before the recorder. It was but the creation of an additional court, with exclusive jurisdiction in such cases, and there is nothing in the section indicating whether the city or county collector was the proper party to sue in those cases.

The provision in relation to the State lien for town and city delinquent taxes which first appeared in the act of 1872, has been substantially continued in all subsequent revenue acts, and by section 2 of the act of 1879, the register, city clerk or other proper officer, of all cities having a population of 5,000 inhabitants or more, were required, within sixty days after the act took effect, to make in a book to be called the "back tax book," a correct list of all tracts of land and town lots on which back taxes should be due in such city for all the years for which the same might be delinquent, and deliver it to the collector of such city; and by section 7: . "All back taxes, of whatever kind, whether State, county or school, or of any incorpor-

ated town or city, appearing due upon delinquent real estate, shall be extended in the 'back tax book' made under this act, and in case the collector of any city or town shall have omitted or neglected to return to the county collector a list of delinquent lands and lots, as required by section 178 of an act concerning the assessment and collection of the revenue, approved March 30th, 1872, the present authorities of such city or town may cause such delinquent list or lists to be certified as by said section contemplated, and such delinquent taxes shall be by the county clerk put upon the 'back tax book' and collected by the collector under the authority of this act;" and by a proviso to the section, in all cases where the auditor or other proper officer, is required by provisions of the charter of any city of 5,000 or more inhabitants to make the list for city delinquent taxes, in this section provided for, and deliver it to the collector of such city, he shall proceed to collect such delinquent tax list so made, in the manner and under the authority provided by this act and that to which it is amendatory.      The exception in the proviso clearly shows that all cities and towns are embraced, except those of 5,000 inhabitants or more, whose charters contain the provisions named in the proviso ; and such provisions are not contained in the charter of the city of Hannibal.

Section 178 of the act of 1872, referred to in the foregoing section of the act of 1879, required the collectors of all cities and incorporated towns having authority to levy and collect taxes, on or before the 1st day of May annually to return to the county collector a list of lands and lots on which taxes levied by such city or town remained due and unpaid, and made it the duty of such collector to obtain judgment and sell the real estate.      These various provisions leave no escape from the conclusion, that the city of Hannibal has no right of action in her own name, to enforce the lien for delinquent taxes levied by her.      The lien given her by her charter of 1870, was taken from the

city, and given to the State, by the act of 1872, and was continued in the State by the subsequent acts.

It must be admitted that the revenue law contains many provisions which are apparently repugnant to each other, and it is no easy task to place such a construction upon them as one may confidently rely upon. Much may be, and in Mr. Bacon's brief has been said, against the conclusion we have reached, worthy of consideration, but that conclusion is the more reasonable, considering all the sections of the several statutes bearing upon the question, and we, therefore, adhere to it.

Appellants further contend that a portion of the taxes sued for were levied without authority of law, viz : the 2. ——. "judgment tax," the "compromise tax" and the "floating debt tax." One-half of one per cent was levied as a judgment tax, and the same amount as a compromise tax for each of the years 1873, 1874 and 1875; and for the year 1876 the levy for the floating debt tax was seven-tenths of one per cent, and for each of the years 1877 and 1878, four-tenths of one per cent ; and in neither of the years 1876, 1877 and 1878 did the aggregate of the levy for general purposes and the floating debt tax, exceed the per centum which the city was authorized to levy for general purposes. The appellants' position is, that the aggregate of all the authorized taxes could not lawfully exceed one and one-half per cent.

The city charter as amended in 1873, contains the following provisions:

Art. 4, Sec. 1. " The city council shall have power within the city, by ordinance not inconsistent with the constitution or any laws of the State, to levy and collect taxes annually upon all real and personal property within the limits of the city for general purposes, not to exceed one and one-half of one per cent upon the appraised value thereof, and to enforce the collection of the same."

Sec. 3. " To levy and collect annually a tax of one-half of one per cent on all the property of said city by law

536 SUPREME COURT OF MISSOURI,

The State ex rel. Van Brown v. Van Every.

subject to taxation, which shall be a special tax for the purpose of paying the principal and interest on the compromise bonds of said city which have been or may hereafter be issued in settlement of its existing debt."

By section 1, it will be observed, the city council is authorized to levy a tax of one and one-half per cent for general purposes, and by section 3, a special tax of half of one per cent for the purpose of paying principal and interest on the compromise bonds of the city, which then had or might thereafter be, issued, etc.; and by an amendment of the charter of the city, in 1874, it was provided that: "Whenever any final judgment shall have been rendered by any court of competent jurisdiction, against the city of Hannibal, the city council of said city shall have power forthwith to levy a special tax sufficient for the payment of the same and the expense of the collection thereof, upon all real and personal property within said city subject to taxation for any purpose, and the money so collected shall be held as a trust fund, subject to be used only for the payment of the judgment on account of which said tax was levied, and the necessary expenses of collecting and disbursing the same." The levy of these special taxes, expressly authorized by the charter, did not deprive the city of the authority to levy, in addition, one and one-half per cent for general purposes. The sections of the charter providing for the levy of these special taxes did not repeal the section authorizing the levy for general purposes, nor is the section authorizing the levy of one and one-half per cent for general purposes to be regarded as a limitation upon the city authorities to levy taxes, but only as a limitation upon the amount to be levied for general purposes. That the "judgment" and "compromise" taxes are not taxes for general purposes, the legislature has declared, by the acts in question ; and however the purposes for which those taxes were levied might be considered in the absence of the legislative declaration, we are bound to regard

them as they have been expressly designated by the legislature.

With regard to the floating debt tax, we are satisfied that there was no authority for its levy: It cannot stand 3. CITY TAXES: on the ground that it was for general pur-special levies. poses, and that the tax levied for general purposes, *eo nomine*, was less than the maximum, by the amount of the floating debt tax. When once a levy for general purposes has been made, whether of less than the maximum rate or not, no special levy, even for an object that might properly be classed under the head of "general purposes," can be made in the absence of a provision of law authorizing it. A municipal corporation can levy no tax that is not authorized by its charter. *Henry v. Bell,* *ante,* p. 194; 2 Dillon on Munic. Corp., § 605. And statutes authorizing the levying of taxes are strictly construed. Ib., note 2, p. 707.

Section 11, article 10 of the constitution of 1875, conferred no power upon the city to levy any tax whatever. 4. ——: constitu- It limited the rate of taxation in cities and tional law. towns, and, by the last clause of the section, declared that such restriction as to rates should apply to taxes of every kind and description, general or special, except taxes to pay valid indebtedness then existing, or bonds which might be issued in renewal of such indebtedness. This section was self-enforcing so far as it limited the power of the general assembly to authorize cities and incorporated towns to levy taxes, but of its own force conferred no power whatever upon cities and towns to levy taxes. Such powers they derive from acts of the general assembly and not directly from the constitutional provision we are considering.

It is also urged that the delinquent tax law is unconstitutional as impairing the right of trial by jury, in that 5. TAXES: collect- it makes the collector's certificate *prima facie* or's certificate as evidence of the facts therein recited. We evidence: constitutional law. are not of that opinion. By the statutory

538 SUPREME COURT OF MISSOURI,

The State ex rel. Van Brown v. Van Every.

law of this State, certain recitals in a sheriff's deed to land sold for taxes or on execution are made *prima facie* evidence of the facts recited, and such provisions have been uniformly upheld. It has been decided that a law declaring such recitals conclusive evidence of the facts so recited, is unconstitutional, but that is as far as this court has gone in that direction.

We do not understand the case of *Clark v. Mitchell*, 64 Mo. 580, to sustain the appellants' position on this subject. The following language occurs in that opinion: "If in *Plimpton's case* it was violative of the constitutional right of trial by jury to allow the report of commissioners, who, duly appointed and sworn, reported the facts they regarded as proved, to be *prima facie* evidence of those facts, how much more is that act an invasion of constitutional right which makes a mere arbitrary military edict a conclusive bar to plaintiff's recovery?" The closing lines of that paragraph indicate the nature of the case then before the court, and the balance is not an expression of unqualified approval of the doctrine announced by the supreme court of Vermont, in *Plimpton. v. The Town of Somerset*, much less of a doctrine which nullifies our statutes in relation to sheriff's deeds above referred to.

Another point urged by appellants' counsel is, that the justice of the peace had no jurisdiction of those of the cases under consideration which originated in a justice's court. We are of a different opinion. Section 4 of the act of 1879, amendatory of section 5 of the act of 1877, reads as follows: "If on the 1st day of January, 1878, any of said lands or town lots contained in said 'back tax book' remain unredeemed, it shall be the duty of the collector to proceed to enforce the payment of the taxes charged against such tract or lot, by suit in the courts of competent jurisdiction of the county, * * which said courts shall have jurisdiction without regard to the amount sued on, to enforce the lien of the State or such cities; *

6. DELINQUENT TAXES: jurisdiction of justice of the peace: recorder of city of Hannibal.

\* and in all cases before justices of the peace where suit is brought for the enforcement of liens as above, where summons shall have been issued against any defendant and the officer to whom it is directed shall make return that the defendant cannot be found, the justice of the peace before whom the suit is pending, being first satisfied that the summons cannot be served, shall make the order as above," and then proceeds to prescribe in what manner the order of publication shall be published, and that if defendant fail to appear at the time and place required by such order, and defend said cause of action, judgment by default shall be rendered as prayed, and shall be as binding and effectual against the property on which the lien is sought to be enforced as if there had been personal service on the defendant.

It is to be noted that the section provides that the justice, being satisfied that the summons cannot be served, " shall make the order as above," when there is nothing in any preceding section in relation to such order. Hence, it is contended that the section by which the attempt was made to confer jurisdiction on justices of the peace, is imperfect and unavailing for that purpose. There is, however, enough in section 5, as amended, to accomplish the object. It provides for an order of publication, when, where and how it shall be published, and clearly enough indicates what it shall contain. It is to be a notice to the defendant of the nature of the suit, where pending, the names of the parties, and the purpose and object of the proceeding, and where and when defendant is required to appear and answer. Omitting any of these elements it would be no notice.

Section 7 of the act of 1877, requires a transcript of the judgment rendered by a justice of the peace to be filed in the office of the clerk of the circuit court of the county or city wherein it is rendered, and provides for the issuance of a special *fieri facias*, describing the real estate

named in the transcript, directed to the sheriff and commanding him to advertise and sell the property, etc.

From these several provisions we think the jurisdiction of the justice incontestable; and we are also of the opinion that the amendment of the charter of the city of Hannibal conferring exclusive jurisdiction upon the recorder in suits to recover delinquent city taxes, to the extent of the exclusiveness of such jurisdiction, was repealed because utterly repugnant to said provisions of the acts of 1877 and 1879, and in the view we have taken of that charter provision, it only provided a special jurisdiction for the enforcement of a tax lien held by the State for taxes which, although levied by the city for city purposes, had by reason of being delinquent, become State taxes subject to the absolute control of the State. By a provision of the charter of the city of Hannibal, the recorder is made *ex officio* a justice of the peace, and both as recorder and justice of the peace, has jurisdiction of actions for the recovery of delinquent taxes, but it is no longer exclusive.

Objections are also made to the sufficiency of the several petitions, but we shall dispose of them by saying, that we think them untenable. This opinion would be interminable if all the points made by the laborious and ingenious counsel were considered at length. His brief of seventy-six pages of printed matter, is an evidence of his industry and indefatigability, as well as of his learning, and if some of the points made by him, receive only a passing notice, it is not because we have not carefully considered them, but that it would require more time to elaborate than we deem it necessary to bestow upon them.

For the foregoing reasons the judgments in the following of the above cases are affirmed, viz: *The State ex rel. Van Brown v. Jas. H. Collins; The State ex rel. Van Brown v. J. A. Van Every; The State ex rel. Van Brown v. Alex. Bowling,* (two cases); *The State ex rel. Van Brown v. Frederick Waller.* In the balance of the cases the floating debt

tax was levied, and the judgments in those cases are reversed and the causes remanded. All concur, except NOR-TON, J., absent.