Thomson, P. J.
The appellant brought this action against the appellee as treasurer of the city and county of Denver to restrain the sale by the latter of the former’s property for unpaid taxes. A demurrer to the complaint for want of facts to constitute a cause of action was sustained. The plaintiff elected to stand on its complaint, and judgment was entered against it.
The complaint alleged the ownership by the plaintiff of certain real estate in the former town of Argo, Arapahoe county, which had become a portion *98 of the city and county of Denver; the levy of a tax for general municipal purposes, on the 6th day of November, 1902, by the board of trustees of that town, it still being, as alleged, an independent municipality, of one mill upon the dollar of the .assessed valuation of the property within its limits; the levy in December, 1902, by the city council of the city and county of Denver, a new municipality, embracing the territory formerly pertaining to the town of Argo, in disregard of the action of the town trustees, of a tax for city purposes of 16-]; mills on the dollar of the assessed valuation of property, including the property of the plaintiff; the payment by the plaintiff of all state and county taxes levied against its property,'and also the full payment of the tax levied by the town of Argo for municipal purposes; its refusal to pay the excess demanded by the defendant on account of the levy by the city and county, being $2,353.95; and the advertisement for sale by the defendant of the plaintiff’s property to make the amount of such excess.
By an amendment to the constitution which was adopted by a vote of the people on the 4th day of November, 1902, and designated as Article 20, the city of Denver, and all municipal corporations included within its boundaries, and also the portion of Arapahoe county which it embraced, were consolidated into a single body politic called the City and County of Denver. — Session Laws 1901, p. 97.
It was provided by the amendment that immediately upon the canvass of the vote showing its adoption, it should be the duty of the governor of the state to issue his proclamation accordingly; and that, thereupon, the city of Denver, and all municipal corporations and that part of Arapahoe county within the boundaries of the city, should merge into the city and county of Denver and the terms of all offi *99 cers of such corporations and county of Arapahoe should expire, except that certain officers of the city of Denver and certain officers of the county of Arapahoe should continue in office as officers of the new corporation until their successors should be duly elected and qualified. The amendment further provided that until the adoption of a charter in the manner prescribed by it, the charter and ordinances of the city of Denver, as they should exist at the time of the taking effect of the amendment should, as far as applicable, be the charter and ordinances of the city and county of Denver. The amendment also provided that the city and county of Denver should succeed to all the property, rights, benefits and liabilities of the included municipalities, and of the county of Arapahoe.
The proclamation of the governor that the amendment had been adopted, was issued on the first day of December, 1902. The town of Argo was one of the municipalities which by virtue of the amendment became merged in the city and county of Denver. But it did not become so merged nor did the terms of its officers terminate until the first day of December,-1902, the day the proclamation was issued. On the 6th day of November, 1902, therefore, the town of Argo was still an independent municipality, and all its officers were still in possession of the same powers and charged with the same duties which pertained to them originally. The. town of Argo was organized under the provisions of the general statute concerning towns and cities; and the powers and duties of its board of trustees in relation to the levy of taxes must be sought there. By the terms of that statute the city council or board of trustees of any city or town is empowered to levy taxes upon taxable property, real, personal or mixed, within the limits of the corporation, which is subject by law to taxa *100 tion for state or county purposes; it is the duty of the county assessor each year, in making his return, to designate the property situate within the limits of any city or town in his county; the county clerk is required as soon as the assessment roll is ready in each year for the extension of the taxes, to extend the city or town taxes upon the tax list in a separate column, properly headed, in the same manner as other taxes are extended, carrying the city or town tax into the general total of all taxes for the year, and to include the city or town taxes in his general warrant to the county treasurer for collection; and it is made the duty of the county treasurer to collect the city or town taxes in the same manner and at the same time as other taxes upon the tax list are collected.— Mills’ Ann. Stats., secs. 4468, 4469, 4471, 4473.
It thus appears that, except the levy, all the proceedings in relation to city and county taxes are conducted by the county officers. The limits of time within which the municipal levy shall be made are not designated in the foregoing provisions; but the levy must be made before it becomes the duty of the county clerk to extend the taxes on the tax list, because the extension must include the city and town taxes,, and it cannot include them unless they have been levied. The question of time must therefore be settled by the general law in relation to county taxes. Looking into that, we find that it is the duty of the county assessor, on or before the first day of October of each year, to make out and deliver to the county clerk an assessment roll, containing in tabular form and alphabetical order the names of the persons and bodies in whose names property has been listed, with the several species of property and its valuation; that upon the delivery of the roll to the county clerk, the assessor and clerk shall carefully compare the various items therein with each other, *101 and with township, town and city plats, or maps, where they have been provided, and that all errors and omissions shall be corrected; that immediately after the completion of the assessment roll the clerk shall make out in duplicate an abstract of the roll, showing the total number of acres of land and its valuation; the-total valuation of town lots, and the totals and- valuation of the various species of personal property, and-transmit one copy to the auditor of state; that as soon as practicable after the taxes are levied, the clerk shall make out a tax list and attach, to it his warrant under his hand and official seal, requiring the treasurer to collect the taxes therein levied according to law, and cause it to be delivered to the treasurer by the first day of November, or as soon thereafter as practicable, who shall thereupon proceed with the collection of the taxes therein levied. — Mills’ Ann. Stats., secs. 3819, 3821, 3826, 3828, 3829, 3852.
It will be seen from the foregoing, that after the delivery by the assessor to the county clerk of the assessment roll, the latter has a variety,, of duties to perform before the tax list is ready for the .treasurer; and that he is confined to no absolutely fixed limit of time in their performance. The time for the delivery of the tax list to the treasurer is, approximately, the first day of November. Making allowance, however, for his possible inability to have it ready by that day, the clerk is given such further time , as may be necessary for the purpose. If not then delivered it must be delivered as soon thereafter as practicable. If, in this case, the tax list had been delivered to the treasurer on the first day of November, the levy by the town trustees of Argo on the 6th day of the same month, would have been too late. The tax. could not have been extended by the county clerk upon the tax list, because that list would have been out of his hands *102 and beyond Ms control. Bnt the presumption is that public officers perform their duty; and' from the fact that the levy was made on the 6th, it must be presumed that the tax list had not then been delivered to the treasurer, and that the levy was made at the proper time.
On the 6th day of November, the trustees- of Argo possessed all the authority they ever had; and a test of the validity of their proceedings at that time, is the same as if the constitution had not been amended. The power to levy taxes for town purposes' was expressly conferred upon them by law; and all their powers remained intact until the first day of December, 1902, the day of the proclamation.
The amendment provided that the city and county of Denver- should succeed to all the property, rights, benefits and liabilities of the city'of Denver, the included municipalities and the county of Arapahoe. The several constituent bodies were left in possession-of their organizations and powers, and might, until the final merger, exercise all their lawful functions; and whatever rights they already possessed, and whatever rights they might acquire in the intermediate time, passed to the new corporation. Among the rights to which the city and county of Denver succeeded was the right created by this levy. If taxes had been collected under it, the money belonged to the city and county of Denver; if not, the levy inured to it, and it could make the collections.
The complaint, aside from naming the date of the levy, describes it as having been made for the fiscal year ending November 30, 1902; and the question whether the fiscal year so ended, is made the subject of considerable argument pro and con. It seems to be supposed on both sides that the question of the validity of the levy is in some way affected by the date of the expiration of the fiscal year. The state *103 and county fiscal year does terminate on the 30th day of November; but the fiscal year of cities and towns, organized under the general law, ends on the 31st day of March, unless by ordinance a different time is fixed. — Mills ’ Ann. Stats., sec. 4447.
But the date of the termination of the fiscal year is a matter of no importance. The validity and effect of the levy depend upon the time when it was made, and the authority .of the board of trustees to make it at that time; and the complaint, having given the date, is not harmed by an erroneous statement respecting the fiscal year.
The point is also made that the amendment became effective immediately upon its ratification by the people; that the included municipalities thereupon ceased to exist as such; and that therefore, at the time of this alleged levy, there was no town of Argo and no board of trustees of the town of Argo. We may concede the proposition that the amendment became part of the constitution on the instant of its ratification; but the conclusion reached by counsel does not follow. A law is none the less effective as such, because it provides for something to be done in the future. While the amendment may have become effective at once, it fixed a time when the consolidation for which it provided should take place; and it was because the amendment had become effective that its provisions relating to the future could be lawfully carried out. By virtue of those provisions the town of Argo remainéd a municipal organization, and its board of trustees its' governing body, until the day the governor’s proclamation was issued.
The statute provides for only one levy for general purposes during the year; and whatever levies were made, prior to the merger, by the several municipalities which afterwards composed the city and county of Denver, were final. — See Oliver v. Carsner, *104 39 Tex. 396; State v. Van Every, 75 Mo. 530; 1 Cooley on Taxation (3d ed.), 593.
The city and county of Denver succeeded to the benefits of such levies by virtue of the amendment; but the amendment gave it no authority to make a further levy. Nor is such authority found in the charter of the city of Denver, which became, as far as applicable, the charter of the city and county of Denver. The provisions of that instrument relating to levy, as contained in sections 2 and 3 of article 6, are the same as those of the general law governing towns and cities, which we have already examined and analyzed, and confer the same power and no greater.
The complaint might well have been more specific respecting the extension of the tax list by the county .clerk, and some other matters; and an order requiring it to be made so would probably be granted on proper motion; but as it is, it is aided by presumptions which make it good as against a general demurrer.
The demurrer should have been overruled, and the judgment will be reversed.

Reversed.