THE STATE EX REL. ZOOLOGICAL BOARD OF CONTROL ET AL. v. CITY OF ST. LOUIS ET AL.—1 S. W. (2d) 1021.

Court en Banc, January 18, 1928.

*Cobbs, Logan & Alexander* for relators.

*Julius T. Muench* and *Charles J. Dolan* for respondents; *Lambert E. Walther* of counsel.

916

WALKER, C. J.—This is an original action in mandamus. Its purpose is to compel the respondents to appropriate out of the taxes levied for municipal purposes in the city of St. Louis for the current year the equivalent of two cents on each hundred dollars of the assessed valuation of the taxable property of said city for the maintenance of a zoological park and to place the amount so appropriated at the disposal of the relators. The relators are members of the Zoological Board of Control of the City of St. Louis, and comprise a majority of said board. The respondents are the Mayor, the Comptroller and the President of the Board of Aldermen who constitute the Board of Estimate and Apportionment. Other respondents are the Collector and the Treasurer.

*The Pleadings*: Respondents waived notice, consented to the issuing of the alternative writ, acknowledged service of same, entered their appearance and agreed to file a return on a day designated.

It appears from the pleadings that in 1915 the General Assembly of this State adopted an enabling act (Secs. 9009 to 9016, R. S. 1919), which provided a method whereby any city having 400,000 or more inhabitants might establish a zoological park and determine for itself to levy a tax of one-fourth of one mill on each dollar of the taxable property of said city for the maintenance and operation of such park. The city of St. Louis, in 1916, being within the class designated in the act of the General Assembly, submitted to the voters of said city at the general election in that year a proposition for the levying of a tax of one-fifth of one mill for the establishment and maintenance of such a park as was authorized by said act, and at said election a majority of those voting voted for said levy. Thereafter an ordinance, numbered 29743, in acceptance of the act of the State Legislature, was adopted by the Municipal Assembly of said city and under the authority of same the Zoological Park was located and established in Forest Park. The care and supervision of said park was vested in a Zoological Board of Control, authorized by said act and ordinance, to consist of the five city officers therein designated, and four citizens to be appointed by the mayor. The board was by said act and ordinance given complete supervision over the Zoological Park and its operations, including the control and expenditure of all moneys collected and required to be placed to the credit of the

park fund. The fund arising from the annual levy and collection of the tax of one-fifth of one mill was required to be deposited in the city treasury to the credit of said park fund, and was to be kept separate and apart from the other moneys of said city and was to be drawn upon by the proper officers of said city upon vouchers authenticated by the Park Board. The authority conferred upon the Park Board was exercised by it to the full extent authorized by said act and ordinance until and including the year 1927. On April 14, 1927, the Board of Estimate and Control of said city, charged with the establishing of the tax rates for the current year, refused to submit and recommend to the Board of Aldermen of said city a bill providing for the levy of one-fifth of one mill for the Zoological Park Fund; and recommended the passage of an ordinance establishing the 1927 city tax rate for municipal purposes at one dollar and thirty-five cents on each one hundred dollars of the taxable property of said city, that being the full amount of the levy authorized under the Constitution of this State. It is alleged by the relators that said ordinance so submitted and adopted ignored the statute and ordinance for the levy of one-fifth of one mill for the support and operation of the Zoological Park and refused to make the same. That said city, through its duly constituted officers, have continued to refuse to make said levy and have declared their purpose not to provide for the assessment and levy of said tax for the support of the Zoological Park or to perform any duty in connection therewith, on the ground that the act of the General Assembly (Secs. 9009-9016, R. S. 1919), and the ordinance of said city (No. 29,743), are unconstitutional and void.

The relators further say that it is now too late for the Board of Estimate and Apportionment to submit to the Board of Aldermen and for that board to pass an ordinance levying a special tax of two cents on each one hundred dollars of the assessed value of property in said city for the Zoological Park fund for 1927. It is therefore prayed that the said Board of Aldermen be required by ordinance to appropriate out of the said tax for "municipal purposes" the part thereof which should have been levied for the Zoological Park fund, amounting to two cents on each one hundred dollars of assessed valuation of the taxable property in said city and place the same to the credit of the Zoological Park Fund, to be drawn on and expended by the Zoological Board of Control in accordance with said act and ordinance. The relators, alleging that they are otherwise remediless, save through the issuance of and enforcement of this writ, pray that said city and its officers charged with the assessment, levy, and custody of the revenue therein, be required to comply with the provisions of said act and ordinance; and that said city, through its officers authorized to perform that duty, be required by mandamus to treat said levy of one dollar and thirty-five cents on the taxable

property of said city for "municipal purposes" as including the levy of said tax of one-fifth of one mill on the dollar on the property of said city for the year 1927, as and for the Zoological Park Fund for said year; and when collected that the same be deposited in the city treasury to the credit of the Zoological Park Fund; and that the Zoological Board of Control be permitted to exclusively direct the expenditure of said fund, and to permit said fund to be drawn upon by the City Comptroller only upon authenticated vouchers of said Board of Control.

An alternative writ was issued embracing the allegations of the petition.

The respondents' return thereto alleges that the provisions of Sections 9009 to 9016, Revised Statutes 1919, are void as in violation of Sections 1 to 10 of Article 10 of the Constitution of Missouri, in that under said constitutional provisions as applicable to the facts in this case, only the corporate authorities of a municipal corporation are authorized to levy taxes for municipal purposes; and that said Sections 9009 to 9016 delegate to the voters of any city of the class named therein the right to impose a tax upon the taxable property in such city to be levied and collected as other taxes. That the city of St. Louis, under Sections 20 to 25 of Article IX of the State Constitution is authorized to and has framed a charter which the people have ratified and that the same can be amended only in the manner therein provided; that this charter provides for the government and control of all local matters within said city; that the establishment and maintenance of a zoological park is a local matter for the establishment of which no provision has been made in the city charter and which can only be effected by an amendment thereto, that no such amendment has been made. That the adoption by the State Legislature of Sections 9009 to 9016 was unauthorized, in that the power therein attempted to be exercised was local in its nature and had been confided to the people of St. Louis under its charter. That in the adoption of said statutory sections by the Legislature, Sections 20 to 25 of Article IX of the State Constitution was violated, which define the powers conferred upon the people of said city in the formation and adoption of a charter, its limitations and the manner in which it may be amended. That said statutory sections are in further violation of said Sections 20 to 25 of Article IX, of the Constitution in that they attempt to authorize one thousand taxpayers of said city to fix the amount and agree upon the annual levy for the support of a zoological park and to submit the adoption of such amount as an annual tax to a majority of the qualified voters of a municipality voting at an election on such proposition; that in thus attempting to delegate the power of taxation, the Legislature violated the provisions of said sections of the Constitution. That under the charter of the city of St. Louis provisions may be made, in accordance

with the law and ordinances, for the establishment of a zoological park. That said statutory sections are an attempt in an unauthorized manner to amend the State Constitution. That there is no authority in the charter of the city of St. Louis for the levying of a tax of one-fifth of one mill for a zoological park; that the establishment of such a park is purely a municipal matter; that respondents derive their powers exclusively from the charter which contains no provision authorizing the levy of this tax. That Section 9009 of said statutory sections is further violative of Section 11 of Article X of the State Constitution, because the second provision of said section (9009) attempts to limit the taxing authority of said city by compelling it to reduce the maximum rate of taxation authorized by the Constitution, by an amount equal to the tax levied to create the Zoological Park Fund. That said statutory sections are void in that they are special legislation and within the inhibition of Section 53 of Article IV of the Constitution.

Respondents further state that Sections 9009 to 9016, Revised Statutes 1919, are unconstitutional because they violate Section 7 of Article IX of the State Constitution providing that the General Assembly shall provide by general laws for the organization and classification of cities and towns, that the number of such classes shall not exceed four, and that the powers of each class shall be defined by general laws, so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions in this, to-wit: That the said statutory sections provide for the establishment and maintenance of a zoological park in cities that now have or may hereafter have a population of 400,000 inhabitants or more, thereby subdividing cities of the first class into two classes, with different powers and subject to different restrictions, namely, cities of the first class authorized to establish zoological parks, and cities of the first class without such authorization.

Finally respondents state that the city of St. Louis is fully empowered under its charter to establish and maintain a zoological park, and that it is the intention of respondents to maintain such zoological park by providing therefor by ordinance, and by making appropriations for the support of the same in the manner prescribed by the charter.

This is followed by the usual prayer for the quashal of the alternative and the denial of the peremptory writs.

Relators in their reply traverse the affirmative allegations of the return except that they admit that the city of St. Louis, in pursuance of Sections 20 to 25 of Article IX of the Constitution of Missouri, adopted a charter for its government, and they admit that the said city is empowered under its charter to establish and maintain a zoological park and allege that it is wholly immaterial what the intentions of respondents are as to the maintenance of such a park.

*The Statute*: Section 9009, Revised Statutes 1919, defines the conditions under which certain cities may levy a tax for the establishment and maintenance of zoological parks. The question as to the legality of the power therein granted constitutes the vital issue for determination. We therefore set forth the section as adopted:

"Section 9009. *Certain Cities May Levy Tax for Building Zoological Parks.* When one thousand taxpayers of any city in this State which now has or may hereafter have four hundred thousand inhabitants or more shall petition the proper authorities asking that an annual tax of one-fifth of a mill on the dollar annually on all the taxable property in such city shall be levied for the establishment, maintenance or extension of a zoological park for the benefit of the public in such city, and shall ask that the question whether such a tax shall be levied be submitted to the voters of the city at a regular election, provided no special tax for a zoological park shall then be subject to be levied and the proper authorities shall, in legal notice of the next regular election give notice that at such election every voter may vote 'for a one-fifth mill tax for the zoological park' or 'against a one-fifth mill tax for the zoological park' and if the majority of all the votes cast in such city upon such proposition for and against a one-fifth mill tax for the zoological park shall be for the tax, the tax specified in such notice shall be levied and collected in like manner with other general taxes of said city, and the proceeds of said tax shall be known as 'the zoological park fund:' *Provided,* that such tax shall cease in case the legal voters of such city shall so determine by a majority vote at any annual election held therein; *provided further, however,* that when a majority of the voters of such city shall have voted for a one-fifth mill tax for a zoological park, the authorities, officials or representatives of the city whose duty it shall be to fix the tax rate for such city shall have the tax for a zoological park at the rate specified in consideration in fixing the tax rate, and shall so fix said rate that with and including such tax for a zoological park the constitutional limitation upon the taxing power of such city shall not be exceeded."

Section 9010 defines a zoological park.

Section 9011 prescribes the manner in which boards of control for such parks shall be appointed, states the number of their members and defines their powers.

Section 9012 has reference to the organization of such boards, the limits of their official tenures, the power of the mayor to remove them for cause, and that the mayor, comptroller and park commissioner and such other city officials as may be designated by ordinance may be made *ex officio* members of said board.

Section 9013 authorizes the board of control to make rules and regulations for its own guidance in the administration of the park fund, of the expenditure of which the board shall have exclusive

control as well as of the supervision, care and custody of the grounds. Further provision is made in this section for the deposit of the funds of the park in the city treasury and that it shall be kept separate and apart from other moneys and drawn out only upon authenticated vouchers of the park board. Other powers are granted not material to the determination of the issue at bar.

Section 9014 grants the free use of the park to the public.

Section 9015 prescribes the reports required to be made by the board to the legislative branch of the municipal government.

Section 9016 authorizes the enactment of ordinances protecting zoological parks.

*The Ordinance*: After the enactment of the Zoological Park Statute (Sections 9009 to 9016, supra), in accordance therewith more than 1000 taxpayers of the city of St. Louis petitioned the authorities that there be levied an annual tax of one-fifth of one mill on each dollar of the taxable property of said city for the establishment, maintenance and extension of a zoological park and asking that the question be submitted to the voters of said city at a regular election. The question was submitted and the proposition to levy the tax received a majority of the votes cast. The result of said election was certified and declared in favor of said tax. The Municipal Assembly thereupon enacted the ordinance numbered 29743. This enactment, after providing for the repeal of former ordinances not material here, provided that a zoological park be established and located in Forest Park. The management and care of the same was vested in a board of control of nine members, of which five, consisting of certain city officers named, were to become *ex officio* members, the four additional members to be named by the Mayor. The official terms of the members were defined; the manner of their organization and the election of their officers were prescribed and the power was given the Mayor to remove any member of the board for cause. Their power to make by-laws and rules for their own guidance was declared and the scope of their power and the character of their duties were stated. They were required to make annual reports to the Municipal Assembly as to the manner in which they had discharged their duties.

Other sections of the ordinance declare acts injurious to the park to be misdemeanors, and a synopsis of the same is not material in the determination of the issue here under consideration. It is enough to say that the ordinance in its general provisions follows the authority for its adoption embodied in the statutory Sections 9009 to 9016, supra, and constitutes an acceptance of its provisions and evidences the exercise by the city of the power therein conferred.

I. First, as to the legal propriety of mandamus to compel the performance of the duties here sought to be enjoined upon the re-

922

spondents. The statute (Secs. 9009 to 9016, supra), hereinafter referred to as the Park statute, is in the nature of an enabling act. The power it confers and the duties it enjoins are clearly set forth therein; and a review of the same discloses that they are ministerial in their nature. Where a specific ministerial duty, which from its terms is mandatory in its nature, is imposed upon an officer, a board or a tribunal with respect to the levy, assessment and appropriation of taxes or the expenditure of the same, mandamus will lie to compel its performance. The rule as to the application of the writ as above stated has been explicitly approved in construing a similar statute (Laws 1907, p. 94), to that under review, in the case of State ex rel. Bixby v. City of St. Louis, 241 Mo. 231. This case, which involved the question as to the validity of an act providing for the levy and collection of a tax in the city of St. Louis for the establishment, maintenance and extension of a museum of art, held that mandamus was the proper remedy to compel the performance of that duty. Earlier and later cases in this jurisdiction, while somewhat dissimilar in their facts to those in the instant case, give support to the rule as above stated. [State ex rel. Hawes v. Mason, 153 Mo. 23; State ex rel. Rutledge v. School Board, 131 Mo. 505; State ex rel. v. Railroad, 86 Mo. 13; State ex rel. v. Nolte, 285 S. W. 501; Heather v. Palmyra, 276 S. W. 872.]

In view of these rulings, taking into consideration the nature of the duties required to be performed and the necessity of action to effect the purpose of the statute, we hold that mandamus is the appropriate remedy.

II. It is contended that the Park Statute violates Sections 1 and 10 of Article X of the State Constitution.

The burden of these sections of the Constitution is to limit the taxing power to the State, counties and other municipal corporations under the authority granted by the General Assembly.

Section 1 of Article X is as follows: "The taxing power may be exercised by the General Assembly for state purposes and by counties and other municipal corporations, under authority granted to them by the General Assembly, for county and other corporate purposes."

Section 10 of Article X is as follows: "The General Assembly shall not impose taxes upon counties, cities, towns or other municipal corporations or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof, the power to assess and collect taxes for such purposes."

It is contended that the statute violates these sections in that it provides that the General Assembly may, first, delegate to any

incorporated city of 400,000 or more the power to impose a tax upon the taxable property of such city to be levied and collected in the manner of other general taxes; and second, that the General Assembly has attempted in said statute to impose a tax for municipal purposes upon that class of cities.

As to the first contention: Section 1 only permits the levying of taxes by municipal corporations for corporate purposes under authority granted to them by the General Assembly. From that body the power of the municipality as to the levy of taxes is derived, whether for corporate or other purposes. As to the first part of the contention, this supervening power of the General Assembly under the plain terms of the Constitution, cannot be gainsaid. Possessed of this power it may, in the exercise of the same, specify the purposes for which the tax may be levied and when levied and collected how it shall be expended. This is all that is attempted to be done by the statute. It delegates no power to the voters to levy the tax. While it provides for the levy, it allows the voters to determine when it shall become operative.

As to the second part of the contention: The nature of a zoological park and the purpose of its establishment and maintenance is a sufficient answer to the contention that a tax levy to create and support it is for a purely municipal or corporate purpose. Broadly speaking, while established and maintained by funds derived from the taxable property of the city, they are for the benefit of the public. Their recreational and educational features which are concomitants of all parks of this character, may be enjoyed by the general public, regardless of its citizenship. The instructive character of zoological parks, not only to school children but to every one interested in natural history, is too well known to admit of discussion. Such parks therefore may be said to be established and maintained for the public interest and welfare and that the act authorizing their creation and support does not violate either Section 1 or Section 10 of Article X of the State Constitution.

Our approval of the statute in the Art Museum case (State ex rel. Bixby v. St. Louis, supra), and the rule of construction laid down in State ex rel. Hawes v. Mason, supra, lend support to the above conclusion in that these cases clearly distinguish between local matters of purely municipal or corporate concern, and those which may be local as to their establishment but bear no relation to the corporate or municipal purposes of the city. In the Mason case the court held, the purpose of the statute not being purely governmental or municipal, that Sections 1 and 10 of Article X of the Constitution had no application. A like ruling was announced in the Bixby case, in which the statute was similar in its material features to that at bar.

III. The validity of the Park statute is also assailed on the ground that it is an attempt to legislate as to the local affairs of the city of St. Louis and in effect amend the city charter and thus violate Sections 20 to 25 of Article IX of the State Constitution. While it is true that these sections clearly define the right of the city to adopt and amend a charter in harmony with the Constitution and laws of the State, Section 25 provides that "notwithstanding the provisions of this article, the General Assembly shall have the same power over the city and county of St. Louis that it has over other cities and counties of this State."

In determining what constitutes a local corporate matter within the meaning of Sections 20 to 25 of Article IX, this court said:

"The Constitution does not confer on the city the right, in framing its charter, to assume all the powers that the State may exercise within the city limits, but only powers incident to its municipality. . . . There are governmental powers the just exercise of which is essential to the happiness and well-being of the people of a particular city, yet which are not of a character essentially appertaining to the city government. Such powers the State may reserve to be exercised by itself, or it may delegate them to the city, but until so delegated they are reserved." [State ex rel. Garner v. Mo. & Kan. Tel. Co., 189 Mo. 83.] The Garner case had reference to the regulation of telegraph rates. The regulation of other matters in such cities by state law has been upheld in numerous other cases, of which the following are illustrations: to require a city to pay the expenses of holding elections for members of the school board of the city, State ex rel. v. Board of Education, 141 Mo. 45; to declare who shall be peddlers and exempting those who sell farm products, Meyer v. City of St. Louis, 185 Mo. 583; providing for the registration of voters in certain cities and for the payment of the expense of same, State ex rel. Faxon v. Owsley, 122 Mo. 68; and regulating elections in the city of St. Louis, Ewing v. Hoblitzelle, 85 Mo. 64.

The statute therefore when construed in the light of these cases cannot be held to be in violation of Sections 20 to 25 of Article IX of our Constitution.

The reason underlying these rulings, which is especially applicable, as we have shown, to the establishing and maintaining of a zoological park, is that the matters there subjected to legislation by the General Assembly were of general state concern in which the public had a sovereign interest. The exercise of the power, therefore, conferred by the statute, does not violate the Constitution, nor does it amend the city charter.

IV. It is furthermore claimed that Section 11 of Article X of the Constitution, limiting the rate of taxation in cities, is violated by

the Park statute. Section 11 confers no power on the city to levy any tax; it operates exclusively as a limitation upon the power of the city to levy and collect taxes. The present tax rate in the city of St. Louis for municipal purposes is now limited to $1.35 on each one hundred dollars of taxable property. The tax authorized under the statute is included, as it is required to be, in estimating the total tax rate and the entire amount of same does not exceed the constitutional limit. The language of this court in State ex rel. Van Brown v. Van Every, 75 Mo. 530, is relevant in determining the construction to be given Section 11 of Article X. "That section," says the court, "is self-enforcing so far as it limited the power of the General Assembly to authorize cities and incorporated towns to levy taxes, but of its own force conferred no power whatever upon cities and towns to levy taxes. Such power is derived from acts of the General Assembly, and not directly from the constitutional provision we are considering."

The power of the General Assembly being complete in the premises, the statute did not violate the Constitution in providing, as it did, that the levy of taxes for the support of the Zoological Park should be considered in fixing the maximum rate permitted by the Legislature to cities.

V. It is also contended that the Park statute violates Section 47 of Article IV and Section 6 of Article IX of the Constitution. Section 47, Article IV, prohibits the General Assembly from authorizing any city to lend its credit or grant money to any individual, association or corporation. Section 6, Article IX, prohibits cities from subscribing to the capital stock of railroad corporations and from making donations or lending credit to same.

The gist of respondents' contention is that the Park statute is an attempt to create an association and to authorize the city to make appropriations for the support of the same. The statute, when read in the light of the nature of the park and the purpose for which it is established and maintained, constitutes a sufficient answer to this contention. The Board of Control therein provided for does not constitute such an association as is prohibited by the constitutional sections invoked. Created by a state law and maintained by the city it may be generally said to be an institution of the State and the city, the purpose of which is to serve the public. Wholly subservient therefore to these powers, it possesses none of the characteristics of an independent association or corporation. The requirement that its management shall be entrusted to a board of control, a majority of which shall be city officials, is a potent fact in determining its character. That the Park therefore as defined by this statute, is a public in-

stitution; and that it is required to be conducted for the benefit of the public, frees that act of its creation from the inhibitions of Section 47 of Article IV and Section 6 of Article IX, above cited.

It is held in Jasper County Farm Bureau v. Jasper County, 286 S. W. 381, that appropriations of money to farm bureaus for their support did not constitute a gift or grant of money to a private association within the meaning of Section 47 of Article IV or Section 6 of Article IX but were rather appropriations in payment for expenditures in carrying out the work of a public county institution.

Under a very similar state of facts concerning the establishing of an Art Museum it was held in the Bixby case, supra, that the constitutional provisions here under review were not violated.

VI. The Park statute, it is claimed, is violative of Section 19 of Article X of the Constitution. This section provides that no money shall be paid out of the State Treasury, except in pursuance of an appropriation by law. There is no basis under the terms of this statute for this contention. The required tax is levied and collected by the city under the authority of a state law, which was accepted and rendered operative by a vote of the people. The law as thus adopted and rendered operative simply directs the manner in which the funds arising from such collection shall be kept and paid out. The method here given legislative sanction has been approved by this court in the Mason case, 153 Mo. 23, and in the Bixby case, 241 Mo. 231, and other cases therein cited.

VII. The Park statute, it is also urged, is violative of Section 53 of Article IV of the Constitution. The contention is that the statute is local or special in its nature and that it attempts to regulate the affairs of the city of St. Louis. Imprimis, it is not a local or a special law, but by its terms applies to all cities that now have or may hereafter have 400,000 or more inhabitants. This court has frequently held that laws having reference to cities of a specified population are general in their nature. Citations to verify this holding seem superfluous, or as those given to similes put it, are like "carrying coals to Newcastle." Moreover, a reference to the thirty-three subdivisions of Section 53 of Article IV of the Constitution, prohibiting local or special laws, places no inhibition upon the regulation of the affairs of the city of St. Louis by the General Assembly when such laws as at bar meet the other constitutional requirements, although at the time of their enactment they may apply to but one city. [State ex inf. Barker v. Southern, 265 Mo. 1. c. 286, 177 S. W. 640; State ex rel. Waterworth v. Clark. 275 Mo. 95, 204 S. W. 1090; State v. Keating, 202 Mo. 1. c. 209, 100 S. W. 648.]

VIII. Section 7 of Article IX of the Constitution it is contended is violated by the Park statute. This section provides for the classification of cities and towns and limits the same to four classes. In considering this contention the fact must not be ignored that the city of St. Louis operates under a special charter. Thus operating legislation in regard thereto does not have the effect of creating a new class. In ruling upon this question in Kansas City v. Stegmiller, 151 Mo. l. c. 204, 52 S. W. 723, we held that Kansas City and St. Louis constitute two constitutional classes, distinct from those chartered and classified by the Legislature; and that the Legislature may legislate directly for these constitutional cities without impinging upon the Constitution, and in legislating therefor it does not create a new class, but simply provides for a class created by the Constitution.

A ruling to the contrary in Murnane v. St. Louis, 123 Mo. 479, and St. Louis v. Dorr, 145 Mo. 466, were overruled in State ex rel. McCaffery v. Mason, 155 Mo. 486, 55 S. W. 636, in which we held that the statute there under consideration which provided for the appointment of election commissioners in the city of St. Louis did not violate the Constitution by the creation of another class of cities. In overruling the Murnane and Dorr cases, the court said, at page 502: "In so far as concerns the classification idea," in these cases, "as applied to the city of St. Louis, it must be regarded as no longer authoritative."

In further discussing the question in the Mason case, 155 Mo. l. c. 501, the court said: " 'We think it is plain that the framers of the Constitution . . . excluded from its legislative classification the city of St. Louis. . . . It follows that the Legislature may legislate directly for these constitutional cities without infringing upon the Constitution, and in legislating therefor it does not create a new class, but simply provides for a class created by the Constitution.' "

A violation of Section 7 of Article IX of the Constitution was therefore not committed by the enactment of the Park statute.

The statute having been shown to violate no provision of the organic law, it will not avail the respondents as a defense to this action to claim that the revenues of the city are needed for other purposes than the maintenance of a zoological park. To so hold would, in effect, authorize the representatives of the city to substitute their judgment for the mandatory terms of a law which, in addition to its force and effect as a legislative enactment, has been given the express approval of the taxpayers.

It was the duty of the respondents to include the tax required to be levied for the maintenance of the Zoological Park in the amount of $1.35 levied for 1927 for general municipal purposes. Having failed and refused so to do it is ruled, that one-fifth of one mill on each dollar of the tax now levied for municipal purposes in the city of St. Louis for the year 1927 be set apart by respondents as required

by Sections 9009 to 9016, Revised Statutes 1919, and ordinance No. 29743 of said city, for the maintenance and extension of the Zoological Park, and that a peremptory writ therefor be awarded. All concur.