**STATE ex rel. The KANSAS CITY SYMPHONY, Appellant,**

v.

**The STATE of Missouri, et al., Respondents.**

**No. WD 70382.**

Missouri Court of Appeals, Western District.

Feb. 23, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 2010.

Application for Transfer Denied June 29, 2010.

Richard W. Miller, Esq., Kansas City, MO, for appellant.

Robert L. Presson, Esq., Jefferson City, MO, for respondent.

BEFORE DIVISION ONE: LISA WHITE HARDWICK, Presiding Judge, THOMAS H. NEWTON, Chief Judge, and ALOK AHUJA, Judge.

LISA WHITE HARDWICK, Judge.

The Kansas City Symphony (Symphony) appeals from a judgment denying its declaratory judgment claim against the State of Missouri (State) and its action for mandamus relief against the Missouri General Assembly (Legislature). The Symphony sought a declaration that the State is required, pursuant to Section 143.183.5,[1] to provide tax revenue funding for the Missouri Arts Council Trust Fund and sought orders compelling the State and the Legislature to comply with the statute. The Circuit Court of Cole County granted the Defendants' motion for judgment on the pleadings, finding that the Symphony's claims were barred by sovereign immunity and article III, section 36 of the Missouri Constitution. On appeal, the Symphony contends the court erred in applying the law. For reasons explained herein, we find no error and affirm the judgment on the pleadings.

## STANDARD OF REVIEW

■■■ In cases where the circuit court does not hear evidence, it may hear argument and enter judgment on the pleadings. Rule 55.27(b). "The question presented by a motion for judgment on the pleadings is whether the moving party is entitled to judgment as a matter of law on the face of the pleadings." *RGB2, Inc. v. Chestnut Plaza, Inc.*, 103 S.W.3d 420, 424 (Mo.App. 2003). "The well-pleaded facts of the non-moving party's pleading are treated as ad-

mitted for purposes of the motion." *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596, 599 (Mo. banc 2007). Because a judgment on the pleadings addresses an issue of law, our review is *de novo* and without deference to the circuit court's ruling. *Cures Without Cloning v. Pund*, 259 S.W.3d 76, 80 (Mo.App.2008).

## FACTUAL AND PROCEDURAL HISTORY

In 1994, the Legislature enacted Section 143.183.2 to provide funding for the Missouri Arts Council Trust Fund by transferring from the general revenue fund an amount equal to fifty percent of the estimated income tax revenues collected from nonresident members of professional athletic teams and nonresident entertainers. Section 143.183.2, RSMo 1994, provided in relevant part:

> For fiscal year 1996, and for each subsequent fiscal year for a period of nine years, an amount equal to fifty percent of such [income tax revenue] estimate shall be transferred, *subject to appropriation*, from the general revenue fund to the Missouri arts council trust fund established in section 185.100, RSMo, and any amount transferred shall be in addition to such agency's budget base for each fiscal year.

(Emphasis added.)

In 1998, the Legislature amended this statute to extend the funding for an additional four years and to increase the income tax revenue percentage to sixty percent. § 143.183.4, RSMo Cum.Supp.1998. A subsequent amendment, in 2003, extended the funding through 2017 and deleted the phrase "subject to appropriation." § 143.183.5 (emphasis added).

Pursuant to Section 185.100.1, the Legislature established the Missouri Arts Coun-

---

1. All statutory citations are to the Revised Missouri Statutes 2000, as updated by the Cumulative Supplement 2009, unless otherwise noted.

cil Trust Fund (Arts Trust Fund) and its Board of Trustees to manage the funds transferred under Section 143.183.5. The Arts Trust Fund enabling statute provides that "[s]ubject to appropriations, moneys in the fund shall be used solely for the promotion of the arts in Missouri and for the administrative costs of the Missouri arts council." § 185.100.1.

The Arts Trust Fund created a program to encourage long-term investments in the arts by offering matching grants for monies raised by arts organizations. In 2000, the Board of Trustees for the Arts Trust Fund executed a written incentive agreement to provide matching funding in an amount equal to one-half of the monies raised by The Kansas City Symphony. The incentive agreement expressly stated that such funding shall be "[s]ubject to annual appropriations." During the next few years, the Symphony raised endowment funds of more than $3.7 million, which it anticipated would be matched by trust funding under the incentive agreement.

In 2006, the Symphony filed a petition, in the Circuit Court of Cole County, alleging that the State had "failed and refused to allocate the revenues required by § 143.183" since 1997. The petition was later amended to seek a declaratory judgment and an order requiring the State to pay the delinquent amount of $63,902,716, plus interest, to the Arts Trust Fund. The amended petition also added the Legislature as a defendant and sought a writ of mandamus to compel the Legislature to comply with Section 143.183.

The defendants filed a motion for judgment on the pleadings. The circuit court granted the motion, finding that: (1) the claims against the State and the Legislature were barred by the doctrine of sovereign immunity; and (2) the Symphony's interpretation of Section 143.183.5—as mandating a transfer of funds from the general revenue fund without appropriation—was unconstitutional. The court entered judgment in favor of the State and the Legislature on all claims. The Symphony appeals.

## Analysis

### Sovereign Immunity

In its first point on appeal, the Symphony contends the circuit court erred in determining that its claims were barred by sovereign immunity. The Symphony argues that the State waived sovereign immunity by enacting Section 143.183.5 and by entering into the incentive agreement to match arts funds raised by the Symphony. Citing *Crain v. State Employees,* 613 S.W.2d 912, 917 (Mo.App.1981), and *V. S. Dicarlo Co. v. State,* 485 S.W.2d 52, 54 (Mo.1972), the Symphony asserts that such waiver can be inferred in situations where a statute provides a tangible benefit or the State executes a contract to provide funding.

The Symphony's argument relies on the assumption that the legislature, by enacting Section 143.183.5, has unequivocally committed itself to transfer funds to the Arts Trust Fund without the need for appropriation. This assumption is misplaced and is not supported by the *Crain* or *DiCarlo* decisions.

In *Crain,* retired state employees sought to bring compensation claims against the state retirement system. 613 S.W.2d at 914. The trial court granted a motion to dismiss on grounds of sovereign immunity, despite statutory language authorizing the retirement system to "sue and be sued in its own name." *Id.* at 917. The court of appeals reversed, finding that the express statutory language indicated the legislature's intent to waive sovereign immunity. *Id.*

In contrast, there is no comparable language in Section 143.183.5 authorizing the State to sue or be sued. The Symphony instead cites dicta in *Crain* wherein the court, relying on the *DiCarlo* case, stated that regardless of the "sue or be sued" language, "when a statute provides a benefit or awards a contract, a waiver of immunity from suit to enforce the benefit or contract is inferred." *Id. DiCarlo* addressed a defense of sovereign immunity where the State had entered a contract for construction of a building but then refused to pay for extra work performed beyond the contract provisions. 485 S.W.2d at 53. Reasoning that the legislature did not intend a contract completely lacking in mutuality, the court inferred a waiver of sovereign immunity binding the state to its performance under the terms of that contract. *Id.* at 54.

■ All waivers of sovereign immunity are to be strictly construed. *Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876, 882 (Mo.banc 1993). Both *Crain* and *DiCarlo* involve clear contract principles that do not exist in this case. The only "contract" here is the incentive agreement between the Symphony and the Board of Trustees for the Arts Trust Fund. This lawsuit was not filed against the Trust Fund or its Trustees seeking enforcement of the alleged contract. The Symphony's claim under Section 143.183.5 is directed against the State and the Legislature, but there is no indication that the "contract" was authorized or approved by the General Assembly as in *DiCarlo*. "The implied waiver [of immunity] is limited to matters relating to the specific contract authorized." *DiCarlo*, 485 S.W.2d at 56–57. The incentive agreement here does not reference Section 143.183.5, and the agreement specifically states that the Board of Trustees' donation of matching funds to those raised by the Symphony is

"subject to appropriation." This wording is at odds with the Symphony's bare assumption that Section 143.183.5 either mandates an appropriation or obviates the need for one.

■ Having failed to overcome sovereign immunity on the declaratory judgment claim, the Symphony further contends that sovereign immunity is not a defense to the mandamus action against the Legislature. We agree with the Symphony that mandamus is an appropriate remedy to compel public officials to perform specific "ministerial" or mandatory duties, such as those referenced in *State ex rel. Zoological of Control v. City of St. Louis*, 318 Mo. 910, 1 S.W.2d 1021, 1028 (1928) (City had mandatory duty to levy and collect tax that was authorized by state law and approved by City voters). However, as discussed more fully under Point II, the Symphony cannot demonstrate that the Legislature had a ministerial obligation to transfer general revenue funds to the Arts Trust Fund. Because the transfer of funds under Section 143.183.5 was subject to appropriation, compliance with the statute was discretionary and not mandatory. Mandamus will not lie to compel an agency to perform a discretionary duty. *State ex rel. Great Lakes Pipe Line Co. v. Hendrickson*, 393 S.W.2d 481, 483 (Mo.1965). Accordingly, the Symphony failed to state a claim for mandamus relief as a matter of law. The mandamus claim was properly denied on that basis, and the defense of sovereign immunity was never at issue.

Point I is denied.

### Application of Section 143.183.5

■ In Point II, the Symphony contends the circuit court incorrectly interpreted Section 143.183.5 in granting the State's motion for judgment on the pleadings. The Symphony argues that the repeated use of the word "shall" in the stat-

ute indicates the State had a mandatory duty to transfer monies from the general revenue fund into the Arts Trust Fund, without the need for appropriation. As amended in 2003, Section 143.183.5 provides:

> For fiscal year 2000, and for each subsequent fiscal year for a period of sixteen years, sixty percent of the annual estimate of taxes generated from the nonresident entertainer and professional athletic team income tax *shall* be allocated annually to the Missouri arts council trust fund, and *shall* be transferred from the general revenue fund to the Missouri arts council trust fund established in Section 185.100, and any amount transferred *shall* be in addition to such agency's budget base for each fiscal year.

(Emphasis added.)

■ To determine the meaning of the statute, we start with the plain language of the statute itself. *Bauer v. Transitional Sch. Dist. of City of St. Louis,* 111 S.W.3d 405, 408 (Mo.banc 2003). We agree with the Symphony that use of the word "shall" generally connotes a mandatory duty. *Id.* Whether the use of the word "shall" in a statute is considered mandatory or directory, however, is primarily a function of context and legislative intent. *Id.*

The 2003 amendment to Section 143.183.5 that deleted the phrase "subject to appropriation" certainly supports the Symphony's argument that the Legislature intended that tax revenue be automatically transferred from the general revenue fund to the Arts Trust Fund. However, Section 143.183.5 must be read in conjunction with the statute creating the Arts Trust Fund, Section 185.100.1, which includes the following language: "Subject to appropriations, moneys in the fund shall be used solely for the promotion of the arts in Missouri. . . ." The Legislature's practice from the inception of the Arts Trust Fund has been to implement the provisions of these two statutory sections by transferring funds in an appropriations bill [2]—another indication that it did not intend to exempt these general revenue funds from that process. Thus, we conclude that the language of Section 143.183.5 indicating that the general revenue funds "shall be allocated" and "shall be transferred" to the Arts Trust Fund is directory, rather than mandatory, and does not supplant the appropriations process.

We are further concerned that the Symphony's interpretation of the statute creates a constitutional conflict. Relying on *State ex rel. Fath v. Henderson,* 160 Mo. 190, 60 S.W. 1093 (1901), the circuit court concluded that a mandatory transfer of funds under Section 143.183.5 would run afoul of the appropriations requirement in article III, section 36 of the Missouri Constitution.[3] We agree.

In *Fath,* a statute directed that the proceeds of a newly created estate tax be placed into a special fund. 60 S.W. at 1094. The statute provided that the "moneys deposited in the said fund shall be appropriated by the general assembly for

---

2. For example, in 1997 the Legislature passed an appropriations bill to transfer $4,428,383 from the general revenue fund to the Arts Trust Fund. 1997 Mo. Laws 67 (§ 7.065). More recently, in 2008 the Legislature used the appropriations process to transfer $10,800,000 to the Arts Trust Fund. 2008 Mo. Laws 139 (§ 7.120).

3. Article III, section 36 of the Missouri Constitution provides in relevant part:

> All revenue collected and money received by the state shall go into the treasury and the general assembly shall have no power to divert the same or to permit the withdrawal of money from the treasury, except in pursuance of appropriations made by law.

public educational purposes." *Id.* The relators argued that the statute was invalid because it conflicted with the separate appropriations process required by the Missouri Constitution. *Id.* at 1093. Rejecting the relators' argument, the Supreme Court upheld the constitutionality of the statute, finding the legislature could allocate revenue to a special fund "subject to subsequent appropriation for the purpose for which it was levied[.]" *Id.* at 1096. Although the tax revenue was directed to a special fund under the statutory language, "it still belongs to the state, and may be appropriated to another and different use[.]" *Id.* at 1097.

The rationale in *Fath* is instructive in applying the plain language of Section 143.183.5. The provision directing a transfer of funds from the general revenue fund to the Arts Trust Fund does not obviate the need for appropriation. The policy underlying the constitutional appropriations requirement is that each legislature must have discretion to respond to the financial needs of the times. As the Supreme Court observed in *Fath,* "one general assembly cannot tie the hands of its successor[.]" 60 S.W. at 1097. The legislature is permitted to establish a special fund and allocate revenue to that fund, but the actual disbursement of such funds is nonetheless subject to appropriation by future legislators. *Id.*

■ To otherwise interpret the statute as avoiding the appropriations process would render it unconstitutional under article III, section 36. Such an interpretation would also create a perpetual or automatic continuing appropriation under section 143.183.5, in violation of other constitutional provisions. Article IV, Section 28 provides that no money can be withdrawn from the state treasury except by appropriation and every appropriation shall expire within six months after the period for which it was made. Article IV, section 23 provides that appropriations can be made for only one or two fiscal years. Article IV, section 26 gives the governor a line item veto over any appropriation. As a principle of statutory construction, this court should reject an interpretation of a statute that would render it unconstitutional, when the statute is open to another plausible interpretation by which it would be valid. *Blaske v. Smith & Entzeroth, Inc.,* 821 S.W.2d 822, 838–39 (Mo. banc 1991).

■ Finally, the Symphony argues the language of Section 143.183.5 "imposes a trust upon the funds collected" and, therefore, requires a mandatory transfer to the Arts Trust Fund. Citing *Board of Public Buildings v. Crowe,* 363 S.W.2d 598 (Mo. banc 1962), and *Mallory v. Barrera,* 544 S.W.2d 556 (Mo. banc 1976), the Symphony contends that monies collected pursuant to a specific statutory scheme are to be held in trust by the State and can only be used for the intended purpose set forth in the statute. We find nothing in these cases to suggest that Section 143.183.5 creates a *special trust* and requires mandatory disbursement of funds.

*Crowe* dealt with revenue bonds for the construction of a state office building. 363 S.W.2d at 600. The Legislature authorized the bonds to be repaid with rent proceeds from state agencies housed in the building, and the State Treasurer was to hold the proceeds as custodian. *Id.* A group of taxpayers argued, in part, that this arrangement violated article III, section 36, which required state funds to be deposited into the treasury, and provided for the withdrawal of state funds in a method (i.e. not by "appropriation") contrary to article IV, section 28. *Id.* at 601.

While recognizing that these rent proceeds would be "state funds" as opposed to private money, the court held the rents

were not part of the general revenue of the State because they "will have already been withdrawn from the general revenue by regular appropriations, assigned to specific agencies or departments for their general support, and thus made subject to their disbursement; a portion of this money will thereafter be regularly requisitioned by the respective agencies and applied as rent." *Id.* at 606. In other words, the funds had already been through the appropriations process and did not need to be appropriated again. Thus, the Court concluded that the rent proceeds were "in the nature of a special state fund" or "trust fund" that could be disbursed for the stated purpose of repaying the bonds. *Id.* at 608.

Importantly, the Court also found the revenue bond monies, which had not been previously appropriated, were subject to provisions of article III, section 36 and had to be placed in the state treasury for later appropriation. *Id.* at 607. "This money is also charged with a trust, but it differs from the rentals in that it would not have passed through the treasury at any time and would not have been withdrawn therefrom by appropriation." *Id.* This distinction in *Crowe* is relevant in the instant matter because even though the bond proceeds were considered to be in the nature of a trust fund, only the previously appropriated rents and bond proceeds *after* appropriation were classified as special trust funds subject to disbursement for their stated purpose. *Crowe* supports our holding that the transfer of funds under Section 143.183.5 cannot be mandated prior to legislative appropriation.

*Mallory* was a declaratory judgment action raising the issue of whether the State of Missouri could use federal funds to pay public school personnel to provide teaching services to students at private schools. 544 S.W.2d at 558. Missouri law would have prohibited such expenditures. *Id.* at 561. The court held that such federal funds were held in trust for the purposes specified under federal law and could be appropriated for those purposes that are not proscribed by the laws of Missouri. *Id.*

Similar to the Symphony's argument on appeal, the defendants in *Mallory* asked the court to find that the federal funding arrangement created a "special trust fund, separate and apart from the state treasury" to allow disbursement of the funds as prescribed by federal law and "thereby avoid the fiscal scheme created by the Missouri Constitution[.]" *Id.* The Court declined to reach that issue, finding that it was not "justiciable" on the pleadings presented. *Id.* at 561–62. Given that disposition, *Mallory* does not support the Symphony's assertion that Section 143.183.5 imposes a special trust, such as the one that was carefully distinguished in *Crowe*.

We find no error in the circuit court's application of Section 143.183.5. The court correctly determined that the State and the Legislature cannot be compelled to transfer general revenue funds to the Arts Trust Fund without complying with the constitutional requirement for appropriation. Point II is denied.

## CONCLUSION

We affirm the judgment of the circuit court.

All Concur.