

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| STEPHANIE DOYLE, et al., | ) | *Opinion issued July 22, 2021* |
| | ) | |
| Appellants, | ) | |
| | ) | |
| LUKE BARBER and CHRISTINE CHANEY, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | No. SC99185 |
| | ) | |
| JENNIFER TIDBALL, et al., | ) | |
| | ) | |
| Respondents. | ) | |

APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Jon E. Beetem, Judge

PER CURIAM

Stephanie Doyle, Melinda Hille, and Autumn Stultz, three Missourians who are eligible for MO HealthNet coverage under article IV, section 36(c) of the Missouri Constitution, ("Plaintiffs") brought suit challenging the refusal by the Department of Social Services ("DSS") to provide that coverage because the General Assembly failed to appropriate adequate funding. The circuit court rejected Plaintiffs' claims because it found the ballot initiative that enacted article IV, section 36(c) violated article III, section 51 of the Missouri Constitution, which prohibits initiatives from appropriating money without

creating revenue to fund the initiative. Because article IV, section 36(c) does not appropriate money and does not remove the General Assembly's discretion in appropriating money to MO HealthNet, the circuit court erred in declaring article IV, section 36(c) constitutionally invalid. The circuit court's judgment is affirmed in part and vacated in part, and the cause remanded for the circuit court to enter judgment for the Plaintiffs, which includes determination of the appropriate injunctive relief.

**Background**

For Fiscal Year 2021, Medicaid, known in Missouri as MO HealthNet, provided health care benefits only for certain categories of low-income Missourians such as those receiving state supplement payments for the aged, blind, and disabled; pregnant women; children under age 19; their custodial parents; and those who are 65 and older. *See* section 208.151, RSMo Supp. 2019. In August 2020, however, Missouri voters approved a citizen ballot initiative that amended the Missouri Constitution to change MO HealthNet coverage. The initiative, now article IV, section 36(c) of the Missouri Constitution, has often been referred to as "Medicaid expansion" because it increases MO HealthNet eligibility from what had previously been permitted under Missouri law.

Article IV, section 36(c) defines a new category of eligible Missourians for MO HealthNet coverage and services: adults ages 19 to 64 whose income is at or below 138% of the federal poverty level. It is estimated this new category could include more than 275,000 Missourians.[1] Article IV, section 36(c) provides this new category of eligible

---

[1] This number may include some individuals who previously were eligible, e.g., certain Missourians who are low-income parents, sight impaired, or disabled.

Missourians "shall be eligible for medical assistance under MO HealthNet and shall receive coverage for the health benefits service package." Further, article IV, section 36(c) required DSS to "submit all state plan amendments necessary to implement this section to the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services" by March 1, 2021, and to "take all actions necessary to maximize federal financial participation in funding medical assistance pursuant to this section."

DSS timely submitted a state plan amendment to the federal government to comply with the requirements of article IV, section 36(c), anticipating the General Assembly would appropriate sufficient monies to fund Medicaid expansion. The General Assembly then considered and rejected several recommendations for separate line-item funding for Medicaid expansion and, in the end, it appropriated money for MO HealthNet in appropriation bills that did not reference article IV, section 36(c). As a result, DSS withdrew its proposed state plan amendment.

The Plaintiffs filed suit against DSS and others, asserting they are eligible for MO HealthNet coverage and services under article IV, section 36(c) and DSS is in violation of that provision by not providing them coverage and by failing to maximize federal funding for Medicaid. The Plaintiffs sought (1) a declaratory judgment stating DSS' decision to refuse to extend benefits violates article IV, section 36(c); and (2) an injunction requiring DSS and MO HealthNet to take the steps necessary to implement article IV, section 36(c), which includes re-filing the state plan amendment.

DSS filed an answer and alleged that, because the General Assembly did not fund Medicaid expansion, DSS lacks authority to enroll individuals eligible under article IV,

3

section 36(c) and to disburse taxpayer money for "that purpose." In the circuit court, DSS stipulated it will deny MO HealthNet program benefits to individuals whose eligibility for the program arises solely under article IV, section 36(c). It also stipulated it will not reimburse providers for services provided to individuals whose eligibility for MO HealthNet arises solely under article IV, section 36(c).

Luke Barber and Christine Chaney ("Proposed Intervenors") filed a motion to intervene as a matter of right pursuant to Rule 52.12(a)(2) and attached to their motion a proposed petition. The proposed petition sought declaratory and injunctive relief substantially similar to that sought by the Plaintiffs and relief pursuant to 42 U.S.C. section 1983 for alleged due process and equal protection violations. The Proposed Intervenors subsequently filed a motion to substitute their proposed petition with one that omitted their section 1983 allegations. The circuit court overruled the motion to intervene, finding the Plaintiffs adequately represented the Proposed Intervenors' interests and the delays inherent in adding another party would prejudice the original parties.

On June 21, 2021, the circuit court conducted a trial on stipulated facts and exhibits. The circuit court determined the initiative that resulted in article IV, section 36(c) violated article III, section 51 of the Missouri Constitution and, therefore, was never effective. The circuit court entered judgment in favor of DSS and the other defendants on all claims, and

4

the Plaintiffs and the Proposed Intervenors appealed. This Court has exclusive appellate jurisdiction under article V, section 3 of the Missouri Constitution.[2]

## I.

The Court first addresses the Proposed Intervenors' claim that the circuit court erred in overruling their motion to intervene as a matter of right because the Plaintiffs do not adequately represent their interests. The circuit court's ruling will be affirmed "unless there is no substantial evidence to support that decision, it is against the weight of the evidence, or it erroneously declares or applies the law." *State ex rel. Koster v. ConocoPhillips Co.*, 493 S.W.3d 397, 403 (Mo. banc 2016). An applicant seeking intervention under Rule 52.12(a)(2) bears the burden of establishing "three elements: (1) an interest relating to the property or transaction which is the subject of the action; (2) that the applicant's ability to protect the interest is impaired or impeded; and (3) that the existing parties are inadequately representing the applicant's interest." *Id.*

The Plaintiffs and the Proposed Intervenors share the same interests. Like the Plaintiffs, the Proposed Intervenors are individuals who are eligible for MO HealthNet pursuant to article IV, section 36(c), and they seek to enroll in and receive health coverage from the MO HealthNet program. Furthermore, the Proposed Intervenors sought to make arguments in support of their petition for declaratory and injunctive relief that are

---

[2] DSS contends the Proposed Intervenors' appeal should have been filed in the court of appeals because it does not fall within this Court's exclusive appellate jurisdiction. However, "when the appeal of either appealing party vests jurisdiction in this [C]ourt, the whole case must be heard here." *Walsh v. Sw. Bell Tel. Co.*, 52 S.W.2d 839, 840 (Mo. 1932).

substantially similar to the Plaintiffs' arguments. For these reasons, the Proposed Intervenors failed to establish the Plaintiffs will not adequately protect their interests; therefore, the circuit court did not err in overruling their motion to intervene as a matter of right. *See id.* at 405.

## II.

The Court next considers the Plaintiffs' claims. The Plaintiffs first assert the circuit court erred in declaring article IV, section 36(c) constitutionally invalid because the initiative did not violate article III, section 51 in that it neither appropriates money expressly nor divests the General Assembly of its discretion by requiring it to do so. The Plaintiffs further claim the circuit court erred in granting judgment in DSS' favor because article IV, section 36(c) guarantees them the right to participate in MO HealthNet and FY 2022 appropriation bills fund MO HealthNet.

The circuit court's judgment will be affirmed "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The validity of a provision of the Missouri Constitution is a question of law this Court reviews *de novo*. *Peters v. Johns*, 489 S.W.3d 262, 266 (Mo. banc 2016). "This Court's primary goal in interpreting Missouri's constitution is to 'ascribe to the words of a constitutional provision the meaning that the people understood them to have when the provision was adopted.'" *State v. Honeycutt*, 421 S.W.3d 410, 414-15 (Mo. banc 2013) (quoting *Farmer v. Kinder*, 89 S.W.3d 447, 452 (Mo. banc 2002)).

6

**A. Article IV, section 36(c) does not violate article III, section 51's prohibition against appropriation by initiative**

Article III, section 51 of the Missouri Constitution provides, "The initiative shall not be used for the appropriation of money other than of new revenues created and provided for thereby, or for any other purpose prohibited by this constitution." An "appropriation" is "[a] legislative body's . . . act of setting aside a sum of money for a specific purpose." *Appropriation*, BLACK'S LAW DICTIONARY (11th ed. 2019). Article IV, section 23 of the Missouri Constitution requires that "[e]very appropriation law shall distinctly specify the amount and purpose of the appropriation without reference to any other law to fix the amount or purpose."

By its plain language, article III, section 51 prohibits only initiatives that are used for "the appropriation of money." And, the plain language of article IV, section 23 makes clear an appropriation is the authority to expend and disburse a specific amount of money for a specified purpose. Therefore, what article III, section 51 prohibits is an initiative that authorizes the expenditure and disbursement of a specified amount for a specified purpose without providing new revenue. This includes an initiative that deprives the General Assembly of discretion and requires it to appropriate money for the initiative's purposes. This Court has found:

> Successful [article III, section 51] challenges have been limited almost exclusively to initiative petitions proposing local ordinances where the evident purpose and effect of the proposal was to impose a new obligation leaving *no discretion* as to whether the local governments would or could pay this new obligation and no new source of revenue sufficient to do so.

7

*Boeving v. Kander*, 496 S.W.3d 498, 510 n.6 (Mo. banc 2016) (emphasis added). In either case, the focus of the analysis is on whether the initiative mandates the *appropriation* of money, not whether it will require the *expenditure* of money to implement. Earlier cases from this Court emphasize this point.

In *Kansas City v. McGee*, 269 S.W.2d 662 (Mo. 1954), this Court found an initiative petition that proposed an ordinance creating a fireman's pension plan violated article III, section 51. The proposed ordinance specified that the city council "*shall appropriate* the amount asked for by the trustees administering the pension plan." *Id.* at 666 (emphasis added). Although the proposed ordinance did not "in and of itself appropriate the money to carry out the pension plan," the Court pointed out that the proposed ordinance left no discretion to the city council and plainly required it to appropriate money for the stated purpose. *Id.* Accordingly, the Court held the proposed ordinance, in effect, required an appropriation and, therefore, ran afoul of article III, section 51. *Id.* at 665.

In *State ex rel. Card v. Kaufman*, 517 S.W.2d 78 (Mo. 1974), this Court declined to issue a permanent writ of mandamus requiring a mayor and city council to submit to voters a proposed amendment to the city charter. The proposed amendment would have required that "the salaries of members and employees of the University City Fire Department not be less than salaries received by members and employees of the Fire Department of the City of St. Louis." *Id.* at 79. This Court found, "The obligation under the proposed amendment would afford the officers of the city *no discretion* in the matter of fire department salaries." *Id.* at 80 (emphasis added). Therefore, the Court held the proposed

amendment "in effect is an appropriation measure" prohibited under article III, section 51. *Id.*

In both *McGee* and *Kaufman*, the proposed initiatives deprived the local legislative body of discretion by requiring it to appropriate money for the initiative's purpose. *McGee*, 269 S.W.2d at 666; *Kaufman*, 517 S.W.2d at 80. Accordingly, article III, section 51 prohibits only initiatives that expressly appropriate money (other than newly created funds) for its purposes or that deprive the General Assembly of discretion and require it to appropriate money for its purposes. An initiative that simply costs money to implement does not necessarily require the appropriation of funds so long as the General Assembly maintains discretion in appropriating funds to implement that initiative.[3]

Here, article IV, section 36(c) does not expressly appropriate money. Nothing in article IV, section 36(c) specifically requires the General Assembly to authorize the expenditure and disbursement of a specific amount of money for a specified purpose. *See*

---

[3] The difference between substantive or general laws that require expenditures to implement and appropriations that actually implement them is clearly shown in *State ex rel. Kansas City Symphony v. State*, 311 S.W.3d 272 (Mo. App. 2010). There, the General Assembly enacted section 143.183.2, RSMo 1994, to provide funding for the Missouri Arts Council Trust Fund. *Id.* at 274. The statute provided that a percentage of a certain tax "shall be transferred from the general revenue fund to the Missouri arts council trust fund." *Id.* at 277 (emphasis omitted). Eventually, the symphony filed a petition alleging the state had failed and refused to allocate the revenues required by section 143.183. *Id.* at 275. The court of appeals interpreted the "shall" language in section 143.183 to be directory and not mandatory because, to interpret it otherwise, would cause section 143.183 to violate article III, section 36's prohibition on diverting funds from the treasury without an appropriation. *Id.* at 278. Even though an appropriation was needed to effectuate section 143.183, the General Assembly maintained discretion whether to enact that appropriation. *Id.* at 279.

*Cady v. Ashcroft*, 606 S.W.3d 659, 668 (Mo. App. 2020) (rejecting a pre-election challenge that article IV, section 36(c) violates article III, section 51 because it "does not use the phrase 'stand appropriated' or any similar phrase that indicates an appropriation of existing funds or directs the legislature to appropriate such funds"). The circuit court, however, relying on this Court's decision in *City of Kansas City v. Chastain*, 420 S.W.3d 550 (Mo. banc 2014), held the initiative had the effect of appropriating money because it would cost money to implement and the initiative itself raised no new money for this purpose. While that may be, nothing this Court said in *Chastain* suggests the mere fact an initiative will cost money to implement violates the prohibition in article III, section 51. The question of whether article III, section 51 prohibits anything other than an express appropriation of money not raised by the initiative was not before this Court in *Chastain*. The only action mandated by the proposed ordinance in that case was the imposition of two new sales taxes. *Id.* at 556. It did not require the expenditure of those funds, nor even require the city council to enact an appropriation authorizing their expenditure for a stated purpose. *Id*.

Instead, in *Chastain*, this Court said that article III, section 51 prohibits "an initiative that, either expressly or *through practical necessity, requires* the *appropriation* of funds . . . ." *Id.* at 555 (emphasis added). At most, *Chastain* suggests that – based on *McGee*, *Kaufman*, and other decisions from this Court – an initiative violates article III, section 51, even if it does not expressly use the word "appropriation," when it deprives the General Assembly of its discretion and requires it to appropriate a specified amount for the initiative's purpose.

10

Nothing in article IV, section 36(c) deprives the General Assembly of its discretion and requires it to appropriate a specified amount for MO HealthNet services and benefits. The General Assembly maintains the discretion to decide whether and to what extent it will appropriate money for MO HealthNet programs.[4] Even though it is highly possible the General Assembly appropriated less money than MO HealthNet programs are estimated to cost in FY 2022, the consequences of failing to fund MO HealthNet fully at the outset or even with a supplemental appropriation are not before this Court because they are not relevant to whether article IV, section 36(c) violates article III, section 51. Because article IV, section 36(c) does not expressly appropriate money for MO HealthNet nor deprive the General Assembly of discretion and require it to appropriate money for its purposes, it does not violate article III, section 51.

### B. House Bills 10 and 11 do not contain a limitation against using the funds appropriated to provide coverage or services to individuals eligible under only article IV, section 36(c)

As explained above, the MO HealthNet eligibility criteria in article IV, section 36(c) are valid and now in effect. The substantive law defines the scope of MO HealthNet and, among other things, sets the eligibility criteria for participants and providers. Eligibility

---

[4] The circuit court focused on the factors that may influence, even heavily influence, the General Assembly in determining whether and how much to appropriate for MO HealthNet in a given year. The consequences of whether and how much to appropriate for any particular purpose from the nearly $33 billion at the General Assembly's disposal can – and nearly always will – weigh heavily in the General Assembly's deliberations. But, those considerations – like the decisions themselves – belong to the General Assembly and not to this Court, and the consequences of appropriations that turn out to be less than the full cost of MO HealthNet for FY 2022 are not before the Court in this case.

11

for MO HealthNet was previously a matter of statute but, now, that substantive law includes article IV, section 36(c). The substantive law does not, however, determine whether and how much funding to authorize for MO HealthNet in a given year. That determination is left to the discretion of the General Assembly in its appropriation process.

DSS contends that in the MO HealthNet FY 2022 appropriation bills the General Assembly implicitly exercised discretion to require that none of the appropriated funds be used to provide coverage or services to individuals who would be eligible for MO HealthNet only pursuant to article IV, section 36(c). There is, however, no such limitation in House Bills 10, 11, or other MO HealthNet FY 2022 appropriation bills.

Appropriations consist of both a specified amount and a specified purpose, *see* Mo Const. art. IV, sec. 23, and the appropriations in House Bills 10 and 11 expressly state what their purposes are. DSS highlights several appropriations in House Bill 11 to bring the Court's attention to the appropriated proportion of federal to state funds. In doing so, however, it ignores the expressly stated purpose of each appropriation. For example, section 11.715 of HB 11 specifies its purpose is "[f]or the MO HealthNet Division . . . [f]or physician services and related services including, but not limited to" various covered medical services; section 11.720 of HB 11 states its purpose is for "the MO HealthNet Division . . . [f]or dental services under the MO HealthNet fee-for-service program"; section 11.750 states it is for "the MO HealthNet Division . . . [f]or payments to providers of ground emergency medical transportation"; section 11.760's purpose is for "the MO HealthNet Division . . . [f]or payment to comprehensive prepaid health care plans as provided by federal or state law or for payments to programs authorized by the Frail Elderly

12

Demonstration Project Waiver";[5] and section 11.765 states its purpose is for "the MO HealthNet Division . . . [f]or hospital care under the MO HealthNet fee-for-service program, graduate medical education, and for a comprehensive chronic care risk management program . . . ." Clearly, the bills fund services to all who are eligible for MO HealthNet, and they do not purport to exclude those eligible only pursuant to article IV, section 36(c).

Because DSS' interpretation of House Bills 10, 11, and the other MO HealthNet FY 2022 appropriation bills conflicts with the plain language of those bills, this Court declines to adopt that interpretation, which was described by the circuit court as "semantic and legal gymnastics."[6] When, as here, the language of a statute is plain and unambiguous, the Court "must give effect to the language as written," *Norris v. Dir. of Revenue*, 304 S.W.3d 724, 726 (Mo. banc 2010), and "extrinsic aids to statutory construction cannot be used," *Farmers' & Laborers' Coop. Ins. Ass'n v. Dir. of Revenue*, 742 S.W.2d 141, 143 (Mo.

---

[5] DSS claims section 11.760 of HB 11 evidences a purpose to fund only the pre-expansion population because it contains a reference to "MO HealthNet eligibles described in Section 501(a)(1)(D) of Title V of the Social Security Act," i.e., the pre-expansion population. Section 11.760, however, merely ensures those eligible "may voluntarily enroll in the Managed Care Program[.]" It does not purport to restrict its funding to the pre-expansion population.

[6] Because the plain and ordinary language of MO HealthNet FY 2022 appropriation bills does not restrict funding for coverage or services provided by article IV, section 36(c), the Court does not address whether such restrictions would violate this Court's holding in *Planned Parenthood of St. Louis Region v. Department of Social Services, Division of Medical Services*, 602 S.W.3d 201, 211 (Mo. banc 2020) ("Any attempt to use an appropriation bill to amend such general laws necessarily runs afoul of the multiple subject prohibition in article III, section 23 of the Missouri Constitution."). For the same reason, this Court need not consider DSS' argument that this Court should overrule its recent decision in *Planned Parenthood*.

13

banc 1988). In the end, this "Court refrains from adding words to the statute" under the guise of construction. *Treasurer of State v. Parker*, 622 S.W.3d 178, 181 (Mo. banc 2021). With no ambiguity, the amounts appropriated and other extrinsic evidence cannot be used to alter the plain language of the purposes stated – to fund MO HealthNet without distinguishing between benefits provided to individuals who are eligible as part of the pre-expansion population and those eligible only under article IV, section 36(c).

The General Assembly chose to appropriate funds for the MO HealthNet programs for FY 2022. This was one of presumably thousands of difficult decisions made each year during the appropriation process. But, having made this decision, DSS and MO HealthNet are bound by article IV, section 36(c) concerning which individuals are eligible to enroll when it spends the appropriated funds. Consequently, DSS has appropriation authority to provide services for all individuals eligible for MO HealthNet, including individuals eligible for coverage and services pursuant to article IV, section 36(c).

**Conclusion**

For the reasons set forth above, the circuit court's judgment is affirmed only insofar as it overruled the Proposed Intervenors' motion to intervene. In all other respects, the judgment is vacated, and the cause is remanded to the circuit court to enter judgment for the Plaintiffs, which includes determination of the appropriate injunctive relief.

All concur.