STATE of Missouri ex rel. Albert W. POW-
ERS and Pearline Powers, his Wife, John
Ebner and Gladys Ebner, his Wife, Adele
Erb, Gladys M. Beilstein, Elmer J. Hoelz-
er and Carolyn Hoelzer, his Wife, Person-
ally and as Class Representatives of Per-
sons Similarly Situate, Oakville Point Tax-
payers Association, a Corporation, Re-
spondents,

v.

Carroll J. DONOHUE, Edward W. Garnholz,
Paul M. Morris, Harry N. Soffer, Constitut-
ing the St. Louis County Board of Election
Commissioners, St. Louis County, Missouri,
and James H. J. McNary, Intervenors, and
Vigus Quarries, Inc., a Corporation, Inter-
venor, Appellants.

STATE of Missouri ex rel. Carroll J. DONO-
HUE, Edward W. Garnholz, Paul M. Mor-
ris and Harry N. Soffer, Constituting the
St. Louis County Board of Election Com-
missioners, the County of St. Louis, Mis-
souri, James H. J. McNary, as Supervisor
of the County of St. Louis, Missouri, and
Vigus Quarries, Inc., a Corporation, Rela-
tors,

v.

Noah WEINSTEIN, Judge of the Circuit
Court for the Thirteenth Judicial District
of the State of Missouri, Respondent.

Nos. 49824, 49825.

Supreme Court of Missouri,

En Banc.

June 4, 1963.

George E. Schaaf, Clayton, for St. Louis
County Board of Election Com'rs, Carroll
J. Donohue, Edward W. Garnholz, Paul M.
Morris, Harry N. Soffer, as Members
Thereof.

Norman C. Parker, St. Louis County
Counselor, Donald J. Stohr, Asst. County
Counselor, Wm. J. Becker, Clayton, for
Vigus Quarries, Inc.

H. Jackson Daniel and Robert T. John-
son, St. Louis, for respondents.

HOLLINGSWORTH, Judge.

These cases present the question of the
right of the people of St. Louis County to
propose by initiative petition an amendment
of the comprehensive zoning ordinance of
the county. The title of the proposed or-
dinance is:

."An ordinance amending the St. Louis
County zoning ordinance and the offi-
cial zoning district maps which are a
part thereof, by changing the bounda-
ries of 'K' heavy industrial district and
the 'C' 20,000 square foot single family
district so that there will be transferred
from the 'K' heavy industrial district
to the 'C' 20,000 square foot single fam-
ily district on the official zoning dis-
trict maps certain property specifically
described herein and repealing ordi-
nance No. 2518."

In the first case (No. 49824) certain citi-
zen-landowners of St. Louis County, per-
sonally and as class representatives of oth-

er such persons similarly situate, and Oakville Point Taxpayers Association, a pro forma, non-profit corporation, as plaintiffs, filed a petition in the Circuit Court of the County of St. Louis seeking a writ of mandamus directed to the originally named defendants as members of the Board of Election Commissioners of St. Louis County to require said board to place on the ballot at the general election to be held in St. Louis County on November 6, 1962, for submission to a vote of the people the above titled ordinance, as proposed in an initiative petition signed by some 11,700 citizens and taxpayers of the county. The court issued its alternative writ directing the board to place the proposed ordinance upon the ballot as prayed in the petition or to show cause for its refusal so to do. The board filed return and answer setting forth in detail its reasons for its refusal. Plaintiffs filed reply and a motion for summary judgment. During pendency of the motion for summary judgment, St. Louis County and James H. J. McNary as Supervisor of said county, alleging that the county's political and corporate status would be directly affected by any final judgment rendered in the mandamus proceeding, sought and were granted leave to intervene as parties defendant; also, during pendency of said motion, Vigus Quarries, Inc., alleging that it was the owner of the tract of land described in the ordinance, consisting of 225 acres, and had invested $525,000 in developing a quarry business thereon, likewise sought and was granted leave to intervene as a party defendant. Said intervening defendants separately filed answer and return in which they, in substance, joined with the board in denying that the people of the county were vested with the right to cause to be placed upon the ballot for enactment the proposed amendment to the zoning ordinance of the county by use of initiative petition. Upon consideration of the matters of fact and law pleaded in behalf of each and all of the parties, the court, over objection of all of the defending parties decided that no material issue of fact was involved, that

the only material issue involved was one of law, and summarily rendered judgment making the alternative writ peremptory; and ordered the board to place the ordinance on the election ballot. The original and intervening defendants filed notice of appeal.

The trial court refused to stay its writ pending the appeal. Whereupon, the defendants in that action, by petition filed in this court (case No. 49825), sought to prohibit the trial judge from further enforcement of the writ of mandamus pending decision of the appeal taken. Our provisional rule issued and the two cases were consolidated.

Jurisdiction of the appeal lies in this court because St. Louis County is a party to the action. Article V, § 3, Constitution of Missouri, V.A.M.S.

The following facts are not in dispute. St. Louis County in accordance with the provisions of Article VI, §§ 18(a)–18(*l*) of the constitution, adopted its charter in 1950. Oakville Point Taxpayers Association was incorporated in 1945. Its declared purpose is the preservation and protection of property values in the Oakville area of the county in which the 225 acre tract here in question lies. Vigus Quarries acquired that tract in January, 1962. On May 16, 1962, the county council, by ordinance No. 2518, rezoned the 225 acre tract from a "C" 20,000 square feet single family district to a "K" heavy industrial district and granted Vigus a special use permit to maintain a quarry thereon. Although some of the individual plaintiffs (respondents) herein appeared at a public hearing held prior to enactment of the ordinance and protested the enactment thereof, no question is here raised as to the validity of the action of the council in rezoning the 225 acre tract as set forth in said ordinance.

Immediately after enactment thereof, respondents instituted, but thereafter abandoned, referendum procedure seeking to effect repeal of it. Following abandonment

of the referendum procedure, respondents procured and filed the initiative petitions in question. The effect of the ordinance proposed by these petitions was to repeal the county council's rezoning of the 225 acre tract from an industrial classification, to again place it in a single family classification and to void the special use permit granted Vigus. On September 14, 1962, the Board of Election Commissioners, having considered the initiative petitions, refused to place the ordinance thus proposed on the ballot.

Appellants (the Board of Election Commissioners, the County and Vigus) have assigned numerous grounds seeking reversal of the judgment summarily rendered by the trial court. But first, and, if sound, necessarily dispositive of the case, is their contention that the ordinance purporting to amend a zoning ordinance of the county is not subject to initiative procedure since enactment thereof by means of such procedure would circumvent (a) the lawfully required public hearing before the County Planning Commission after public notice and posting of signs; (b) report thereon to the county council; and (c) legislative action by the county council only after such procedure.

Respondents (citizen-landowning taxpayers, individually and as representatives of their class, and Oakville Taxpayers Association) assert that the trial court correctly overruled appellants' motion to dismiss for the reason that respondents have the right under the constitution and statutes of Missouri and the charter and ordinances of the county to submit ordinances, including those relating to zoning, to a vote of the people through initiative petition. In support of that contention, they say: the initiative and referendum are applicable to acts which are legislative in character, not to those dealing with administrative or executive matters; zoning matters are legislative in character; the initiative petition is a proper vehicle for the submission of a zoning change to a vote of the people; and the procedural requirements of the charter and ordinances of St. Louis County relative to notice and hearing were constructively complied with by respondents.

In asserting that the constitution and the laws of this state and the charter and ordinances of St. Louis County vest the county with the right to submit the proposed amendment to a vote of the people through means of the initiative, respondents cite as their basic authority Article III, § 49, of the Constitution of Missouri. That section and §§ 50 to 52(a) thereinafter following set forth the power reserved to the people of Missouri to propose and enact or reject laws and amendments to the constitution by initiative and to approve or reject by referendum acts of the general assembly. Those provisions, standing alone, do not of course solve the problem with which we here are confronted. The powers reserved to the people of St. Louis County with respect to use of the initiative and referendum are defined and limited by its charter, Article VII, § 77, of which provides:

"The people reserve the power to propose and enact or reject ordinances and amendments to this Charter, independent of the Council, to approve or reject by referendum any ordinance of the Council *except emergency measures*,[1] and to recall any elective County officer."

Article III, § 18, of the charter provides:

"Emergency ordinances shall require the affirmative vote of not less than five members of the Council and shall take effect immediately upon their enactment. *Emergency ordinances* shall be those ordinances relating to the following:

\* \* \* \* \* \*

"(5) *Amendments to the zoning ordinance,* provided that a general revision of the zoning ordinance shall not

1. All emphasis herein is that of this court.

be deemed to be an emergency ordinance;"

Article III, 22, of the charter provides:

"Pursuant to and in conformity with the Constitution of Missouri and without limiting the generality of the powers vested in the Council by this Charter, the Council shall have, *by ordinance, the power:*

\* \* \* \* \* \*

"(20) To exercise legislative power pertaining to public health, police and traffic, building construction, *and planning and zoning,* in the part of the County outside incorporated cities, \* \* \* as may hereafter be authorized by the Constitution or by law, provided that, *until superseded by ordinances of the Council,* the laws pertaining to said matters shall continue to be valid and effective."

Article V, § 57, of the charter creates the Planning Commission and § 58 of said article defines its powers and duties as follows:

"The Planning Commission (which consists of nine members) shall have jurisdiction and all the powers and duties now provided by law, consistent with the provisions of this charter, until otherwise provided by ordinance. *No ordinance relating to zoning which is contrary to the recommendation of a majority of the members of the Planning Commission shall be adopted by the Council except by an affirmative vote of five members of the Council."*

Procedures for zoning changes and amendments, as authorized under the charter, are contained in § 1003.340, St. Louis County Revised Ordinances, as follows:

"1. Procedure for Change in Zoning: Whenever the public necessity,

convenience, general welfare and good zoning practice require, the County Council may order, *after a public hearing, report thereon by the Commission and subject to the procedure provided in this section,* amend, supplement, or change the regulations, zoning district boundaries or classification of property now or hereafter established by this Section. \* \* \*

\* \* \* \* \* \*

"3. Hearing Date—Notice—Posting of Signs—Penalty for Removal or Defacement.

"Upon the filing with the Commission of such petition, addressed to the St. Louis County Council, or upon the adoption of a resolution of intention by the Commission, or Order of the County Council, the matter shall be referred to the Planning Director for report, and shall be set for public hearing before the Planning Commission within sixty days, and the Planning Director shall: \* \* \*."

Subsections (1) and (2) of Paragraph 3 prescribe in elaborate detail the method and form of publication and the form, wording, number and size of signs required to be posted.

Limitations on initiative are set forth in § 106.010, St. Louis County Revised Ordinances, as follows:

"No ordinance shall be submitted to the voters by initiative petition unless the subject thereof is within the legislative power granted to charter counties by the Constitution.[2] In passing on the sufficiency of an initiative petition the Board of Election Commissioners shall refuse to submit any proposed ordinance to the voters if unlawful or unconstitutional."

Respondents cite in support of their contention that zoning ordinances are leg-

---

2. The constitution, Art. VI, § 18(c), provides that counties operating under special charter "may provide for the vesting and exercise of legislative power pertaining to \* \* \* *planning and zoning, in the part of the county outside incorporate cities;* \* \* \*."

islative in character the case of Carson v. Oxenhandler (1960), Mo.App., 334 S.W.2d 394, and numerous cases from other jurisdictions. Appellants readily concede that contention but they insist that in ordering the Board of Election Commissioners to place the initiatively proposed ordinance on the ballot, judgment of the trial court would result in the people exercising legislative power expressly delegated by the charter to the county council; and that, if such action were upheld, the comprehensive zoning ordinance of the county would be crippled and the "due process" safeguards set forth in the above quoted ordinance (§ 1003.340) rendered useless.

The principle asserted by appellants is well illustrated and confirmed by this court in the case of Baum v. City of St. Louis, 343 Mo. 738, 123 S.W.2d 48. In that case a taxpayer filed a suit against the election commissioners of the city to enjoin the holding of an election for the purpose of voting two ordinances under the initiative provisions of the city charter. The purposes of the proposed ordinances were (1) to acquire a five-cent fare mass transportation system and to issue revenue bonds in payment thereof and (2) to call an election to vote on the proposition of voting such bonds. Neither of these proposed ordinances had been recommended by the Board of Public Works. The plaintiff in said action alleged that the proposed ordinances were void because the city charter provided that no ordinance for public work or improvement of any kind could be legally adopted unless prepared and recommended by the board of public service with an estimate of the cost endorsed thereon. In sustaining the contention thus made, this court said, 123 S.W.2d loc.cit. 50: "The enactment of an ordinance under the initiative provisions of a charter, for a public improvement which was not recommended by the Board of Public Service, would interrupt and destroy the scheme and purpose of the restrictions contained in section 1, article 22, supra, as effectively as if such ordinance was adopted by the Board of

Aldermen. Restrictions on the power of the Board of Aldermen of a city to enact ordinances are as a rule applicable to proposals under the initiative provisions." Following citations and quotations from numerous cases from several other states holding to the same effect, this court ruled the initiatively proposed ordinances void, stating that any other interpretation would defeat the purpose of the charter. In reaching that conclusion the court cited with approval a statement made by this court in American Tobacco Co. v. Missouri Pac. Ry. Co., 247 Mo. 374, 157 S.W. 502, 553, with respect to a similar ordinance: "The clear purpose of the charter is and was to provide a wise, comprehensive, durable, and symmetrical system of public improvements, and create a board of public works, and place it in charge thereof, with power and authority to see that all public work desired by the City should conform to that system. The object of placing the system of improvements in the hands of the board was to secure to the public, and the owners of the property affected by the work, the benefit of the knowledge, skill, and unbiased judgment of a body of scientific men, unaffected by local influences, incident to all public improvements."

The Baum case, supra, was also cited and followed in 1954 by the Supreme Court of Utah, in deciding the right of the people of Salt Lake City to rezone an area therein by use of initiative procedure, in the case of Dewey v. Doxey-Layton Realty Co., 3 Utah 2d 1, 277 P.2d 805. The opinion stated, in part, loc.cit. 807: "Of course, an ordinance proposed by the electors of a city under the initiative law must constitute such legislation as the legislative body of the city has the power to enact under the law defining the powers of such body. In Baum v. City of St. Louis, 343 Mo. 738, 123 S.W.2d 48, it was held that ordinances initiated by petition regarding the acquisition of a municipal transportation system were not within the powers of the legislative body inasmuch as the charter prohibited the adoption of ordinances pertaining to pub-

lic works or improvements unless they were prepared and recommended by the board of public service." That court also observed, loc.cit. 808: "As to zoning ordinances, although there are many cases which apply the provisions of a referendum act[3] * * *, we have not been cited to a case where zoning by initiative was accepted by the courts." The court then concluded that the legislature had delegated the power of zoning to the legislative bodies of cities and towns, subject to the restrictions and procedures as defined by the power so granted, and that initiative procedures were hopelessly inconsistent and in conflict with the procedure required for consideration and enactment of zoning ordinances.

Despite the holding of the Baum and Dewey cases, supra, and supporting citations from numerous other cases, respondents say: "To deny of the citizens of this state the right to correct zoning injustices through the initiative procedure would be to deny to them any measure of control over this vital aspect of their lives and property and to deprive them of any political-action remedy against outright confiscation and the most grievous wrongs. With respect to the propriety of submitting a zoning change, by the initiative process, this precise point is a case of first impression, not only in this court, but has apparently never been squarely raised in any other appellate court in this country. The point has only been discussed by inference, and obiter dictum. However, it should be noted in the cases which follow, which involve the propriety of submitting zoning changes to the vote of the people, through initiative petition, that in no case did any court unequivocally state that this was an incorrect or unlawful procedure."

In support of that contention respondents have cited the case of Barnes et al. v. City of Miami et al. (1950), Fla., 47 So.2d 3. In that case plaintiffs appealed from an order of the circuit court dismissing their suit to enjoin the City of Miami and its legislative body (commissioners) from calling and holding an election under initiative provisions of the city charter to determine whether the city commission should adopt an ordinance entitled, loc.cit. 4: "An Ordinance Providing for Low-Cost Housing and Slum Clearance; Providing for Application of Preliminary Advance of Funds by the Housing Authority of the City of Miami, Florida; Providing for a Cooperative Agreement Between the City of Miami, Florida, Dade County, and the United States of America, Acting By and Through Their Respective Duly Authorized Officials and Employees; and Authorizing and Instructing the City Manager and Any and All Other Duly Authorized Officials to Execute the Attached Agreements."

The statutory charter of the city provided, loc.cit. 4: "The people shall have power at their option to propose ordinances, including ordinances granting franchises or privileges and to adopt the same at the polls, such power being known as the initiative." The court, in commenting upon the effect of that provision said, loc.cit. 4: "The power of the initiative may be conferred by the state upon a municipal corporation in respect to any matter, legislative or administrative, within the realm of municipal affairs. Where the power of initiative is given by the legislature it will be generally held to extend to all matters of local concern, *unless some matters are expressly or impliedly excluded from its operation by exceptions contained in the charter*, the general statutes of the state, or constitutional provisions. (Citing cases.) Statutes giving the power of initiative to the electors of a municipality are to be liberally construed by the courts to the ends of permitting rather than restricting the power and to attaining rather than preventing its object." The court then reviewed the Housing Authority Statutes and noted, loc.cit. 6, that to implement the

---

3. The St. Louis County charter, in express terms, excludes the use of referendum procedure to amend the zoning ordinance.

See Art. VII, § 77, and Art. III, § 18 (5), of the charter quoted supra. Respondents do not contend otherwise.

program "exemption from taxation must be given and provisions made for payments in lieu of taxes; streets must be vacated within the area of the project as may be necessary in its development; waivers of the City building code must be granted; changes must be made in zoning restrictions; grants of easements, and dedications of streets, roads, alleys and sidewalks, must be accepted. All these things must be done through the adoption of ordinances by the legislative body of the City; for the City Manager, as the administrative head of the municipal government, does not have the power or authority to close streets, give waivers of the building code, change zoning restrictions, or accept grants of easements or dedications of streets, roads, alleys and sidewalks. The City Manager may not bind the City or enter into a contract of the nature proposed without authorization of the City authorities or the electors who will be bound by it." It then concluded, loc.cit. 6: "[W]hatever may be the extent of the City's power under the initiative provision of its charter, the authority of the City to submit the proposed issue to the electors must be sustained, whether under the view that the provision is unlimited in its aspect or whether on the ground that the matter proposed is legislative in character."

We do not consider the situation presented in that case analogous to the situation here presented. It does not invoke the initiative provisions of a county charter to propose a zoning ordinance. In fact, zoning is not even mentioned in the title of the proposed ordinance. Neither does the subject matter deal with the enactment of such an ordinance. Rather does it deal with the power of the people of the city to seek by means of the initiative the enactment of an ordinance authorizing the city to engage in a public housing program under the U. S. Housing Authority Act of 1937 and the statute of Florida accepting the provisions thereof. The provisions with reference to zoning changes are incidental only to the

question of approval or rejection of the major project.

Respondents have also cited the case of Carson v. Oxenhandler, Mo.App., 334 S.W. 2d 394, which originated in the circuit court of St. Louis County and went on appeal to the St. Louis Court of Appeals. That case, as the Barnes case, supra, involved, not a zoning ordinance, but the right of the people to invoke the referendum provisions of the charter of the county to submit to a referendum election an ordinance authorizing the county to enter into a cooperation agreement with its Housing Authority. Nothing said therein detracts in any manner from the principle announced in the Baum case, supra, and followed by the courts of several other states.

Finally, respondents contend that the requirements of the county charter and the ordinances relative to notice and hearing were constructively complied with by respondents, citing In re Initiative Petition No. 9 of Oklahoma City, 185 Okla. 165, 90 P.2d 665. That case is similar to this only in that it dealt with the legal sufficiency of a form of an initiative petition, which had been challenged only in that respect. The question there considered was in no wise similar to the question here presented.

Respondents say, however, that they "agree that the holding of the court in Baum v. City of St. Louis, supra, was that, for the purposes of that factual situation, those proposing an ordinance should adhere to the same procedural requirements imposed upon the legislative body. However, there has been full compliance with public notice and hearings and to require respondents to hold the same hearings all over again would be absurd, unnecessary and an unwarranted tribute to formalistic minutiae." That contention is untenable. The provisions of the St. Louis County charter and ordinances enacted pursuant thereto expressly provide that zoning ordinances may be enacted by the city council, after a public hearing, following pubic no-

tice published in newspapers and posted signs, consideration of and report by the Planning Commission. The purpose and unequivocal legal import of these provisions are obvious. The ordinance here sought to be enacted by initiative procedure is a zoning ordinance repealing, in effect, the provisions of an amendatory zoning ordinance enacted in accordance with the provisions of the charter. Certainly, hearing and other procedures required and followed in adopting the original amendment cannot be accepted as constituting compliance with a proposed ordinance which would repeal the original amendment.

For the reasons above stated we are constrained to hold that any purported enactment of an amendment to the comprehensive zoning ordinance of the county without lawful compliance with those provisions would be unlawful and void.

The judgment of the trial court is reversed and remanded with directions to quash the writ of mandamus by it issued (in case No. 49824) and to sustain appellants' motion to dismiss the action with prejudice; and the provisional rule in prohibition issued by this court (in case No. 49825) is made absolute.

WESTHUES, C. J., and STORCKMAN, DALTON and HYDE, JJ., concur.

EAGER, J., concurs in result in separate opinion filed.

LEEDY, J., concurs in result and concurs in separate opinion of EAGER, J.

EAGER, Judge (concurring in result).

I would find no particular difficulty in holding that the notices, hearing and report as given, conducted and made in connection with the prior Ordinance No. 2518 would supply those requirements for the Ordinance now proposed; they referred to and affected precisely the same matter.

I would prefer to put this holding upon the basic fact that the respondents are attempting to accomplish by indirection that which they are specifically prohibited from doing directly; that is to say, they may not create any amendment to the zoning ordinance by referendum, but in fact and in substance they are here seeking a referendum upon the enactment of the prior ordinance. I would doubt that any zoning amendment may be accomplished by initiative.