

# SUPREME COURT OF MISSOURI
## en banc

City of Kansas City, Missouri,　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Respondent,　　　　　)
　　　　　　　　　　　　　　　　　　)
vs.　　　　　　　　　　　　　　　　　)　　　No. SC93195
　　　　　　　　　　　　　　　　　　)
Karen Chastain, et al.,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Appellants.　　　　　　)

Appeal from the Circuit Court of Jackson County, Missouri
Honorable Sandra C. Midkiff, Judge

*Opinion issued February 4, 2014*

Karen Chastain and additional members of a "Committee of Petitioners" (collectively, "Chastain") appeal a judgment declaring that a proposed ordinance initiative petition violates article III, section 51 of the Missouri Constitution because the initiative was used for the appropriation of money. Chastain also appeals the dismissal of her counterclaim for mandamus.

The proposed ordinance does not appropriate money and, therefore, does not violate article III, section 51 of the Missouri Constitution. The judgment is reversed, and the case is remanded.

**Facts**

Kansas City is a constitutional charter city that permits citizens to propose ordinances via initiative petition. *See Chastain v. City of Kansas City*, 289 S.W.3d 759, 761 (Mo. App. 2009). In July 2011, Chastain submitted to the city clerk an initiative petition seeking adoption of an ordinance that would impose additional sales taxes "for the benefit of the city."

The preamble to the proposed ordinance states that the purpose of the sales taxes is to construct a light rail system. The proposed ballot title suggests using the revenues to construct infrastructure for a light rail system, a street car, electric shuttle buses and bicycles. The only action mandated by the proposed ordinance is the imposition of two taxes: (1) a 1/4 of one percent sales tax for capital improvements as authorized in sections 94.575 to 95.577 and (2) a 1/8 of one percent sales tax for transportation purposes as authorized in sections 94.600 to 94.655.[1] Although the taxes are imposed for "capital improvements" and "transportation purposes," no particular project is mandated.

The proposed ordinance was referred to the city council's transportation and infrastructure committee. The committee held a public hearing and sent the ordinance to the city council with a recommendation that the council not pass the ordinance. The city council determined that the city was not required to place the election before the voters. Chastain filed a request with the city clerk to place the ordinance on the ballot. The city declined.

The city filed a petition for a declaratory judgment seeking a declaration that the proposed ordinance was facially unconstitutional pursuant to article III, section 51 of the

Missouri Constitution because the ordinance failed to provide the revenue necessary to construct the transportation system. Chastain filed a counterclaim seeking mandamus to require the city to put the proposed ordinance to a public vote.

The trial court entered an order sustaining the city's motion to dismiss Chastain's counterclaim. Subsequently, the trial court entered final judgment for the city on grounds that the proposed ordinance was "an unconstitutional appropriation ordinance under Article III, section 51 of the Missouri Constitution." The judgment then concluded that the "City is therefore not obligated to place the facially unconstitutional ordinance before the voters, and is legally justified in refusing to place said ordinance before the voters."

Chastain raises five points on appeal: (1) that the trial court erred in concluding that the ordinance was facially unconstitutional because insufficient revenue is not grounds for pre-election review of an initiative petition; (2) that the trial court erred in declaring the proposed ordinance to be a facially unconstitutional appropriation ordinance; (3) that the trial court lacked subject matter jurisdiction because the city failed to prove that it lacked an adequate remedy at law; (4) that the trial court erred in dismissing her counterclaim for mandamus because the ordinance was not facially unconstitutional; and (5) that the trial court erred in the admission of certain evidence at the evidentiary hearing.

### Standard of Review

"The standard of review in a declaratory judgment case is the same as in any other court-tried case." *Levinson v. State*, 104 S.W.3d 409, 411 (Mo. banc 2003). "The judgment will be affirmed unless there is no substantial evidence to support it, it is

3

against the weight of the evidence, or it erroneously declares or applies the law." *Id.* In this case, the dispositive issue is whether the proposed ordinances violate the Missouri Constitution. This is a legal question subject to de novo review. *See*, *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012)(legal question in a court-tried case is subject to de novo review).

**Pre-election review of initiative petitions**

Chastain's first point asserts the trial court erred by conducting pre-election review of the facial constitutionality of the proposed ordinance. This point fails because Missouri law authorizes courts to conduct pre-election review of the facial constitutionality of an initiative petition. *See Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 828 (Mo. banc 1990); *Kansas City v. McGee*, 269 S.W.2d 662, 664 (Mo. 1954)(courts may review a law to be enacted by initiative to determine its constitutionality). The idea underlying this rule is that pre-election review of the facial constitutionality of an initiative petition is warranted given the "cost and energy expended relating to elections" and to avoid the "public confusion generated by avoiding a speedy resolution of a question …." *Blunt*, 799 S.W.2d at 828. The circuit court had the authority to engage in pre-election review of the facial constitutionality of the initiative petition.

**Availability of declaratory relief**

Chastain asserts that the trial court lacked subject matter jurisdiction to consider the city's petition for declaratory judgment because the city failed to prove that it lacked an adequate remedy at law. There is no doubt that the trial court had subject matter

4

jurisdiction. *See J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009)(subject matter jurisdiction is a matter of "the court's authority to render a judgment in a particular category of case"). Circuit courts have subject matter jurisdiction to enter declaratory judgments.

The lack of an adequate remedy at law is a prerequisite to relief via declaratory judgment. *See State ex rel. SLAH, L.L.C. v. City of Woodson Terrace,* 378 S.W.3d 357, 361 (Mo. banc 2012). As such, the real issue presented by Chastain's third point is whether the trial court erred in concluding that the city lacked an adequate legal remedy.

Chastain asserts that if the ordinance was placed before the voters and passed, then the city's adequate legal remedy is to repeal the ordinance as it is empowered to do pursuant to the city charter. Missouri law not only permits pre-election review of the facial constitutionality of the initiative petition, but it also expressly allows such a challenge to be raised in an action for declaratory judgment. *See McGee*, 269 S.W.2d at 664 (affirming declaratory judgment that an ordinance proposed in initiative petition facially violated article III, section 51 and need not be submitted for a vote). The circuit court had the authority to enter a declaratory judgment finding that the initiative petition was facially unconstitutional.

### Article III, section 51

Chastain asserts that the trial court erred in concluding that the proposed ordinance is facially unconstitutional. Article III, section 51 of the Missouri Constitution states in pertinent part:

5

> The initiative shall not be used for the appropriation of money other than of new revenues created and provided for thereby, or for any other purpose prohibited by this constitution.

The plain language of article III, section 51 generally prohibits the appropriation of money by initiative, except that an initiative may appropriate revenues created by the initiative proposal. What is prohibited is an initiative that, either expressly or through practical necessity, requires the appropriation of funds to cover the costs associated with the ordinance.

The city's claim, and the trial court's judgment, is based on the premise that the proposed ordinance is an unconstitutional appropriation ordinance because the proposed sales taxes would only "help fund" a series of mandated transportation projects by providing financing for bonds and to secure federal matching funds. This premise is refuted by the plain language of the proposed ordinance.

As noted above, the proposed ordinance mandates the imposition of two additional sales taxes. The two new sales taxes are the only actions mandated by the proposed ordinance. Although the preamble and proposed ballot title represent that the new taxes would be used to "help fund" four specific transportation projects, the ordinance itself does not mandate that the city spend any money, make any plans or do anything at all other than impose the two new sales taxes. The proposed ordinance is not an appropriation ordinance that violates article III, section 51 of the Missouri Constitution.

The fact that the proposed ordinance creates no financial obligations for the city distinguishes the constitutional ordinance in this case from the unconstitutional ordinance at issue in *McGee*. There, proponents of a proposed ordinance establishing a pension

6

plan argued that the ordinance appropriated no funds and, therefore, did not violate article III, section 51. 269 S.W.2d at 666. Although the ordinance in *McGee* did not directly appropriate money, the fact remained that the city was required to fund the pension plan by appropriating the amount asked for by the trustees administering the pension plan. *Id.* The practical operation of the ordinance yielded a violation of article III, section 51 because the ordinance "has the same effect as if it read that a sum necessary to carry out its provisions as certified by the trustees shall stand appropriated …." *Id.*

Conversely, in this case, the proposed ordinance imposes no unfunded financial obligations on the city either expressly or through practical necessity. The ordinance simply imposes additional sales taxes. There is no appropriation and, therefore, no violation of article III, section 51. The trial court erred in concluding otherwise.

### Mandamus

Having determined that the proposed ordinance does not violate article III, section 51, the next issue is whether the trial court erred in dismissing Chastain's counterclaim for mandamus to require the City to place the ordinance on the ballot.

The trial court denied Chastain's counterclaim on grounds that the proposed ordinance violates article III, section 51. It does not. Further, the city charter provides that after an initiative petition has received the required number of signatures and the procedural requirements of the charter have been met, "[t]he Council shall thereupon submit the proposed ordinance to the electors at the next available municipal or state election held not less than thirty (30) days after such certification by the committee of petitioners for which the City can lawfully provide required notices to the election

7

authorities without seeking a court order." Charter of the City of Kansas City, Missouri, § 703. Therefore, the trial court incorrectly dismissed Chastain's counterclaim. This Court, however, expresses no opinion about the ultimate merits of Chastain's counterclaim for mandamus or about the questions discussed in the concurring opinion, as those issues are not before this Court.

## Conclusion

The trial court erred in declaring that the proposed ordinance violates article III, section 51 and in dismissing Chastain's counterclaim on that basis. The judgment is reversed, and the case is remanded.[2]

_____
Richard B. Teitelman, Judge

Russell, C.J., Breckenridge, Stith and
Draper, JJ., concur; Wilson, J., concurs
in separate opinion filed; Fischer, J.,
concurs in opinion of Wilson, J.

_____

[1] In its entirety, the proposed ordinance reads as follows:

**ORDINANCE NO. 110607**

Enacting a new Section 68.476, Code of Ordinances, entitled KCMO Initiative to Build a New Regional Public Transportation System to enact a new tax totaling 3/8% to be devoted to a multi-modal light rail-based regional transit system headquartered at Union Station to extend for 25 years beginning in 2011, providing for submission of this ordinance to the qualified voters of the City for their approval at the next available election; authorizing and directing the City Clerk to notify the responsible election authorities of this election; authorizing and directing the City Clerk to notify the Missouri Director of Revenue if the proposal is approved by the voters; and recognizing this ordinance to be an emergency measure.

WHEREAS, Sections 94.600 through 94.655, RSMo. authorize a sales tax for transportation purposes of up to 1/2%, and the City currently utilizes 3/8% of that authorization

8

for operation of the Kansas City Area Transportation Authority, leaving 1/8% available for other transportation uses; and

WHEREAS, Sections 94.575 through 94.577, RSMo, authorize a sales tax for capital improvements of up to 1/2% and the City currently uses 1/4% of that authorization for police and public safety purposes, leaving 1/4% available for other capital improvement uses; and

WHEREAS, no sales tax ordinance shall be effective until it has been submitted to the qualified voters of the City and approved by a majority of the qualified voters voting; NOW, THEREFORE,

BE IT ORDAINED BY THE COUNCIL OF KANSAS CITY:

**Section 1**. **ENACTMENT OF KCMO INITIATIVE FOR A MORE GREEN, PROSPEROUS, AND TRANSIT-ORIENTED CITY.** That a new 68-476, Code of Ordinances, entitled Sales tax for KCMO initiative for a more green, prosperous, and transit-oriented city:

**Sec. 68-476. Sales tax for KCMO Initiative For a More Green, Prosperous, and Transit-Oriented City.**

(a) *Imposition of sales tax part one.* Pursuant to the authority granted by and subject to the provisions of section 94.575 through section 94.577, Revised Statutes of Missouri, a tax for the benefit of the city is hereby imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable services at retail to the extent and in the manner provided in section 144.010 through section 144.525, Revised Statutes of Missouri, and the rules and regulations of the director of revenue issued pursuant thereto. The rate of the tax shall be 1/4 percent on the receipts from the sale at retail of all tangible personal property or taxable services at retail within the city, if such property and such services are subject to taxation by the state under the provisions of section 144.101 through section 144.525, Revised Statutes of Missouri. The tax Shall become effective sometime in 2011, for a period of twenty-five years, unless sooner terminated, and shall be collected as provided in section 94.575 through section 94.577, Revised Statutes of Missouri.

(b) *Imposition of sales tax part two.* Pursuant to the authority granted by and subject to the provisions of section 94.600 through section 94.655, Revised Statutes of Missouri, a tax for the benefit of the City is hereby imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable services at retail to the extent and in the manner provided in section 144.010 through section 144.525, Revised Statutes of Missouri, and the rules and regulations of the director of revenue issued pursuant thereto. The rate of the sales tax shall be 1/8 percent on the receipts from the sale at retail of all tangible personal property or taxable services at retail within the City, if such property and such services are subject to taxation by the state under the provisions of section 144.010 through section 144.525, Revised Statutes of Missouri. The tax shall become effective in 2011, and shall apply to all sales made after that date for a period of twenty-five years, unless sooner terminated, and

shall be collected as provided in section 94.600 through section 94.655, Revised Statutes of Missouri.

**Section 2**. **REAFFIRMATION OF MBEIWBE AND WORK FORCE POLICIES.** The City's MBE/WBE and construction workforce policies will be followed in the use of all capital appropriations.

**Section 3**. **SPECIAL ELECTION CALLED**. A special election is called and shall be held on ?2011, at which election the question of imposing and extending the sales taxes described in this ordinance shall be submitted to the qualified voters of the City for their consideration, as required by section 94.577 and section 94.605, Revised Statutes of Missouri.

**Section 4. BALLOT TITLE**. The ballot title shall be:

## QUESTION #1

## SHALL THE FOLLOWING BE APPROVED?

*KCMO Initiative For a More Green, Prosperous, And Transit-Oriented City*

In order to provide the people a more green, prosperous; and transit-oriented city shall the City of Kansas-City, Missouri impose a capital improvement sales tax of 1/4% and a transportation sales tax of 1/8%, both, not to exceed 25 years, beginning in 2011, to help fund these improvements to the city's transit system:

*Construct a 22-mile light rail spine from Waldo to a Park & Ride (P&R) lot south of Kansas City International Airport... with electric shuttle service to the terminals ... including stops at or near Brookside, UMKC, the Plaza, Westport, Penn Valley Park & Liberty Memorial, Union Station, the Downtown Power & Light District on Main Street, City Market, NKC, Vivion Rd., Line Creek Park, and Zona Rosa generally following the Country Club right-of-way, Broadway, Main St., Burlington, North Oak Trafficway, and the Interurban right-of-way;

*Construct a 19-mile commuter rail line from south Kansas City to Union Station including stops at or near a P&R lot at Blue Ridge and Hwy. 71, a P&R lot at Blue Ridge and I-470, the Bannister redevelopment site, Swope Park., and the Truman Sports Complex generally following existing rail corridors and Truman Rd.,

*Construct an 8.5-Mile streetcar line from the Kansas City Zoo to Union station including stops at or near Research Medical Center, Citadel redevelopment site, Cleaver Blvd., 39th St., Troost Ave; Hospital Hill, and Crown Center generally following the Prospect Ave., Linwood Blvd., and Gilham Rd. corridor;

10

*Construct an electric shuttle bus and bikeway feeder network that will connect to all rail stations with the bikeways separated from traffic and using where possible the grassy medians of city boulevards; and also use the tax proceeds to finance bonds and secure federal matching funds?

_____ YES _____ NO

---

[2] Given the disposition of this case in Chastain's favor, there is no need to address her claim that the trial court erred in allowing the city to introduce certain exhibits into evidence.



# SUPREME COURT OF MISSOURI
## en banc

City of Kansas City, Missouri,           )
                                          )
      Respondent,           )
                                          )
vs.                                       )     No. SC93195
                                          )
Karen Chastain, et al.,                   )
                                          )
      Appellants.            )

## CONCURRING OPINION

I concur in the reasoning and disposition as set forth in the well-stated majority opinion. I write separately, however, merely to emphasize what the Court is ***not*** holding.

## I.    *Remand of this Matter Does Not Suggest Any View as to the Merits or Outcome of Chastain's Mandamus Petition*

The City initiated this case seeking a declaration that the ordinance proposed by initiative petition pursuant to the City's charter, if approved by the voters, would violate article III, section 51 of the state constitution. The proponents ("Chastain") counterclaimed seeking a writ of mandamus to compel the City to submit the proposed ordinance to voters at the next available municipal or state election. The majority opinion properly reverses the trial court's declaration that the proposed initiative would violate article III, section 51. In addition, because the trial court dismissed Chastain's mandamus petition based solely on its erroneous declaration regarding the City's

constitutional claim, the majority opinion properly vacates that portion of the judgment and remands the case for further proceedings.

The Court does ***not*** hold, however, nor should the disposition of this appeal be taken to suggest, that Chastain's mandamus petition must or even should be granted. The Court expresses no opinion on that question. As demonstrated in the majority opinion, the ballot title supplied by Chastain includes statements about the proposed ordinance that are not legally compelled by – nor practically certain to result from – the measure that Chastain seeks to have the voters adopt or reject. On remand, therefore, one or both parties may attempt to raise claims regarding, or seek judicial relief pertaining to, the language in this ballot title. *See* Charter of Kansas City, § 712 (proposal "shall be submitted [to the voters] by ballot upon which there shall appear a ballot title, which may be the legal title of such proposed or referred ordinance or which may be a ***concise and unprejudiced statement of the substance*** of such ordinance") (emphasis added).

Accordingly, this Court will not – and the majority opinion does not – address any claims, arguments, or remedies regarding this subject until they have been presented to and ruled upon by the trial court. *See Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 36 (Mo. banc 1982) ("this Court will not, on review, convict a lower court of error on an issue which was not put before it to decide").

## II. *The State Constitution Does Not Limit the People's Initiative Power Reserved in their City Charter*

Article III, section 51 of the Missouri Constitution prohibits using the initiative process for "the appropriation of money other than of new revenues created and provided

- 2 -

for thereby[.]" An appropriation is legislative authority to spend a certain amount of money for a stated purpose. See Mo. Const. art IV, § 23. Here, the majority opinion holds that nothing in the proposed ordinance purports to authorize the expenditure of any money for any purpose, nor does it purport to commit the City to any project or purpose requiring the expenditure of money (even assuming that the latter qualifies as an appropriation for purposes of article III, section 51). Accordingly, the majority opinion holds that the proposed ordinance does not violate this state constitutional prohibition.

I agree but write separately to express my doubts that *any* city ordinance proposed pursuant to an initiative right reserved to the people in their city charter can violate this constitutional provision. This is because article III, section 51 is a limitation on the power of the initiative that is reserved to the people of this state pursuant to article III, section 49. That section, by its express terms, reserves for the people the "power to propose and enact or reject *laws and amendments to the constitution* by the initiative, independent of the general assembly[.]" [Emphasis added.]

The power being exercised by Chastain in this case is not reserved to her as a function of article III, section 49 of the state constitution. It is reserved to her solely by virtue of article VII of the City charter. A charter is to a city government what the Missouri Constitution is to the state government. *Sanders v. City of St. Louis*, 303 S.W.2d 925, 928 (Mo. 1957) ("charter is the city's organic law and bears the same relation to its ordinances that the constitution of a state bears to its statutory enactments"). "[T]he authority of the city government and the exercise of municipal functions are subject to and controlled by [its] charter, which specifies and limits such

authority and functions." *State ex rel. Carpenter v. City of St. Louis*, 2 S.W.2d 713, 718 (Mo. banc 1928).

Of course, the voters of Kansas City – like the City council – cannot enact an ordinance that violates state law or contradicts the ***substantive*** limitations on all laws in the state and federal constitutions. *State ex rel. Sunshine Enterprises of Missouri, Inc. v. Bd. of Adjustment of City of St. Ann*, 64 S.W.3d 310, 313 (Mo. banc 2002). The right of the people of Kansas City to enact ordinances using the initiative ***process***, on the other hand, is a power that they created and reserved to themselves. Accordingly, their use of that process is subject only to limitations they imposed on themselves in the City charter.

I recognize that a division of this Court invoked article III, section 51 to strike down a city ordinance proposed by initiative in *Kansas City v. McGee*, 269 S.W.2d 662, 666 (Mo. 1954). But the only analysis in that case as to whether limitations on the use of the initiative in enacting state laws or constitutional amendments should apply to the power of initiative reserved in a city charter was that "[l]egislative acts or special charters may authorize enactment of city ordinances by initiative [but] such authorization carries with it constitutional restrictions imposed on the authority granted." This analysis is not sufficient for such an important question, and the time has come to reexamine *McGee*.

The analysis in *McGee* is based solely on the now-discredited analysis in *City of Springfield v. Clouse*, 206 S.W.2d 539, 545 (Mo. banc 1947), *overruled by Independence-Nat. Educ. Ass'n v. Independence Sch. Dist.*, 223 S.W.3d 131, 137 (Mo. banc 2007). *McGee* relies upon the statement in *Clouse* that the "same governmental principles and constitutional provisions apply also to municipalities

because their legislative bodies exercise part of the legislative power of the state." *Clouse*, 206 S.W.2d at 539. Procedural limitations (if any) on the initiative process were not at issue in *Clouse*, however, and the "principles and constitutional provisions" to which *Clouse* refers are the substantive limitations inherent in the separation of powers. Accordingly, *McGee*'s reliance on *Clouse* was misplaced.

Recent cases addressing this issue in more relevant settings yield far more compelling analyses and – more importantly – contrary results. In *State ex rel. Powers v. Donohue*, 368 S.W.2d 432 (Mo. banc 1963), this Court rejected the argument that limitations on the initiative power in article III, sections 50-52(a), standing alone, can invalidate an ordinance because the "powers reserved to the people of St. Louis County with respect to use of the initiative and referendum ***are defined and limited by its charter***." *Id*. at 434 (emphasis added). *See also State ex rel. Petti v. Goodwin-Raftery*, 190 S.W.3d 501, 505 (Mo. App. 2006) ("the Missouri Constitution sets forth the power reserved to the people of Missouri to propose and enact or reject laws and amendments to the constitution by initiative … [but] the powers reserved to the people of Florissant with respect to use of the initiative and referendum processes are defined and limited by the city charter").

Accordingly, I concur with the majority opinion's holding that the proposed ordinance in this case does not violate article III, section 51 of the Missouri Constitution. However, in light of *McGee*'s misplaced reliance on *Clouse* and this Court's more recent (and contradictory) analysis in *Donohue*, litigants who seek to invoke article III, section 51 to strike down proposed city ordinances in the future should have to persuade this

Court – without the aid of *McGee* – why any such limitation on the power of initiative reserved by ***state*** voters in their ***state*** constitution to enact ***state*** laws should apply to a similar – but wholly independent – reservation of initiative powers by ***city*** voters in their ***city*** charter to enact ***city*** ordinances.

_____
Paul C. Wilson, Judge